## OLNEYVILLE WOOL COMBING COMPANY *vs.* PIETRINA DI DONATO.

JUNE 20, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This cause is before the court on the petitioner's appeal from the entry of a decree in the superior court,

following a hearing therein, denying a petition for review filed by the petitioner under the workmen's compensation act. (G. L. 1938, C. 300.)

From the record herein it appears without dispute that the respondent was injured on August 29, 1936, while employed by the petitioner; that on October 1, 1936, an agreement, approved by the director of labor, was entered into by the parties providing for the payment of the respondent's medical expenses by reason of said injury, and for the payment of compensation at the rate of $7 per week because of her total incapacity due to the injury; and that all payments called for by the agreement have been made by the petitioner.

In its petition for review the petitioner alleges, in substance, that the incapacity of the respondent is ended or substantially reduced in that she is able to work, and, therefore, it prays that the compensation payable to her under the terms of the agreement above mentioned may be ordered discontinued or diminished. The justice of the superior court who heard this petition denied it, finding that the respondent was not able to go back to work.

At the hearing in the superior court three doctors and the respondent testified. From the evidence it appeared that the respondent was, at that time, a fairly heavy and somewhat neurotic woman, fifty-one years of age, who had worked off and on in mills, chiefly as a wool comber, since she was eighteen years old. She was married and had four children. She did not read or write either English or Italian and spoke English imperfectly.

At the time of the accident in question she slipped on a wet floor in the petitioner's mill and fell on her back, striking near the base of her spine. Some little time after the accident she went back to the petitioner's mill as a wool comber but was able to work only about a day and a half,

being unable to bend over much or to stay on her feet all day. Other than this she has done no work, apparently not even housework, since she was injured. No bones were broken when she fell but her coccyx was injured. This caused, among other things, considerable pain at the lower end of her spine, marked tenderness in her lower back, some limitation of motion, difficulty in sitting, and insomnia. Following the accident X-ray photographs were taken of the respondent's back several times, and she was examined on different occasions by a doctor sent by the company which insured the petitioner and also by her own doctors.

There is little conflict in the medical testimony concerning the condition of the respondent's back at or shortly before the time of the hearing in the superior court. From such testimony it would appear that there was an enlarged space, of traumatic origin, between certain segments of the respondent's coccyx. This condition allowed the coccyx to move more than normally, thereby causing irritation and pain. Also, the respondent was suffering from a form of arthritis which caused a spur or bone formation to form about the second, third, fourth and fifth lumbar vertebrae. There was marked restriction in the amount of motion in the respondent's spine, complaints by her of pain in the lower back, considerable tenderness from mid-back down to the end of her spine and possibly some muscle spasm.

The doctor who testified on behalf of the petitioner stated that, in his opinion, the condition of the respondent's back would not prevent her from resuming work. Two doctors who were witnesses for the respondent testified that, in their opinion, she was not able to work as a wool comber or at any similar occupation, because of the condition of her back which prevented her from sitting long in one position or standing for any length of time and which interfered seriously with her bending movements. These doctors did give evidence that, in their opinion, the respondent could do some

form of light work. They indicated no particular type of such work as being suitable for her. One of these doctors testified as follows: "I feel this way, Judge: That there is something this woman could do. I feel that she is not totally disabled, or was. There must be a place in there where she could fit into the factory some place. I couldn't say totally and permanently disabled; neither could she go back and do the work that she formerly did." In our opinion there was ample legal evidence in the cause upon which the trial justice could rest a decision that the respondent was not able to resume the same or similar work that she had been doing. Such a finding, being one of fact, under the provisions of the compensation act becomes conclusive in the absence of fraud, and ordinarily would be determinative of this cause.

But assuming the respondent could do some kind of light work, as the medical testimony submitted on her behalf tends to show, there was no evidence in the cause from which the trial justice could properly make a finding reducing the weekly compensation because of partial incapacity, in view of the fact that, in our judgment, the respondent, under the circumstances shown, falls, in any event, within the "odd lot" principle, which has been recognized in this state for a considerable time.

The above principle is stated in the following language in the case of *Lupoli* v. *Atlantic Tubing Co.*, 43 R. I. 299, at page 304: "Broadly stated this rule is, that if the effects of the accident have not been removed, it is not sufficient to entitle an employer to have a reduction in the weekly compensation ordered by the court, that it appears the workman has the physical capacity to do some kind of work different from the general kind of work he was engaged in at the time of the accident, but it must also be shown that the workman either by his own efforts or that of his employer can actually get such work. In other words the burden is on the em-

ployer, the moving party, to show that the workman can get a job.''

The petitioner contends that the above statement of the rule is too broad and that such statement should be limited and clarified. Upon consideration, we do not perceive the present necessity of such action. Of course, every case of incapacity which has changed from total to partial does not bring an injured employee within the application of such rule, but the above statement thereof permits the facts of each case, when the question is raised, to be carefully examined in order to determine whether or not such case falls within the rule.

In the instant cause we are of the opinion that the facts show that the respondent does come within the rule, and that she can fairly be considered as an "odd lot" in the labor market. Apparently she has worked only in mills, principally as a wool comber. She is of middle age, without education and able to speak English only slightly. While the evidence tends to show that the condition of her back would not prevent her from doing light work, it is obvious that she cannot do any kind of light work in general. It is clear that such kind of work as she can perform, considering the condition of her back and her situation in life, must be in the nature of odd jobs not generally obtainable.

Such being the case, the burden under the rule set out in the *Lupoli* case is then placed upon the employer, who is seeking a reduction in the compensation being paid, to show "that the workman either by his own efforts or that of his employer can actually get such work." In the present cause the petitioner has presented no evidence tending to sustain that burden. It has not shown that it has offered the respondent any kind of light work which she could perform or which she has refused to attempt to perform; nor has it suggested or pointed out the existence elsewhere of suitable light work which the respondent could perform or which by

her own efforts she might reasonably obtain. We find, therefore, that the decision of the trial justice on the petition for review was without error.

For the above reasons, the petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Henry M. Boss,* for petitioner.

*Godfrey & Cambio, Gerald L. Bronstein,* for respondent.