Alfred LOMBARDO

v.

ATKINSON–KIEWIT.

No. 98–103–M.P.

Supreme Court of Rhode Island.

Feb. 1, 2000.

Alfredo T. Conte, Providence, for Plaintiff.

Denise M. Lombardo–Myers, Providence, Elaine D. Giannini, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This workers' compensation case concerns the modern status of the so-called odd-lot doctrine.[1] Traditionally, permanently but only partially disabled employees were nevertheless entitled to recover total-disability benefits if, in light of their dimmed employment prospects after suffering a work-related injury, they were deemed unable to perform their regular job or any alternative employment. Such employees, it was said, were an "odd lot" in the labor market and therefore entitled to collect compensation benefits as if they were totally and permanently disabled. We consider here the effect that recent statutory changes in our workers' compensation laws have had upon this doctrine and upon this petitioning employee's entitlement to such benefits.

## Introduction

Article 2, § 10, of the original version of Rhode Island's Workers' Compensation Act (WCA), P.L.1912, ch. 831, provided that if an employee suffered a compensable, work-related injury rendering him or her totally and permanently disabled, the employer was required to pay the injured employee a weekly compensation equal to one-half his or her weekly wages. It further provided that certain listed injuries would be conclusively presumed to have rendered the employee permanently and totally disabled. *Id.* The original WCA, however, did not include specific language addressing those permanently but partially disabled employees who, after suffering a work-related injury, were unable as a practical matter to obtain regular work— the so-called odd-lot employees who found themselves in the situation described by Judge Moulton. Instead this doctrine evolved through common-law decisions of this Court in construing the original WCA and in determining how it should work in practice, as it was amended from time to time. *See Olneyville Wool Combing Co. v. Di Donato,* 65 R.I. 154, 13 A.2d 817 (1940); *Lupoli v. Atlantic Tubing Co.,* 43 R.I. 299, 111 A. 766 (1920). Pursuant to these decisions,

> "[the] rule [was], that if the [disabling] effects of [a work-related] accident have not been removed, it is not sufficient to entitle an employer to have a reduction in the weekly compensation ordered by the court, that it appears

---

1. The term "odd lot" was first applied to employees incapacitated by a work-related injury in the English case of *Cardiff Corp. v. Hall,* 1 K.B. 1009 (1911). There, Judge Moulton stated that an employee should be considered an "odd lot" in the labor market

 "[i]f the accident has left the work[er] so injured that he [or she] is incapable of becoming an ordinary work[er] of average capacity in any well-known branch of the labour market—if in other words the capacities for work left to him [or her] fit him [or her] only for special uses and do not, so to speak, make his [or her] powers of labour a merchantable article in some of the well-known lines of the labour market * * *. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the work[er's] labour in the position of an 'odd lot' in the labour market, the employer must sh[o]w that a customer can be found who will take it * * *." *Id.* at 1020–21.

the work[er] has the physical capacity to do some kind of work different from the general kind of work he [or she] was engaged in at the time of the accident, but it must also be shown that the work[er] either by his [or her] own efforts or that of his [or her] employer can actually get such work. In other words, the burden is on the employer, the moving party, to show that the work[er] can get a job." *Lupoli*, 43 R.I. at 304, 111 A. at 768.

In 1992, however, the General Assembly enacted sweeping reforms to the WCA to eliminate the then-existing problems in the prior workers' compensation regime. P.L. 1992, ch. 31, § 1 (codified at G.L.1956 § 28–29–1.2) (acknowledging that "the system of workers' compensation in the state of Rhode Island is presently in a state of crisis; and * * * sweeping additional reform is required to bring the system into balance and eliminate waste and unnecessary costs * * * "). Among the 1992 revisions to the WCA were new provisions specifically addressing the factual situation covered by the common-law odd-lot doctrine for permanently but partially disabled employees. *See* P.L.1992, ch. 31, § 5 (codified at G.L.1956 § 28–33–17(b)(6)).[2] Significantly, the amendment not only added an undefined "manifest injustice" factor to cases involving claims of odd-lot-employee status, but also shifted the burden of proof for establishing the requisite elements of such a claim from the employer to the employee.

In pertinent part, § 28–33–17(b)(2) now provides as follows:

"in cases where manifest injustice would otherwise result, total disability shall be determined when an employee proves, taking into account the employee's age, education, background, abilities and training, that he or she is unable on account of his or her compensable injury to perform his or her regular job and is unable to perform any alternative employment. The court may deny total disability under this subsection without requiring the employer to identify particular alternative employment."

## Facts and Travel

In 1991 Alfred Lombardo (employee), was a fifty-five-year-old union carpenter who was employed by respondent, Atkinson–Kiewit Construction Company (employer), when he hurt his back in a fall while working on the Jamestown Bridge. In 1993 he underwent back surgery (a lumbar laminectomy). Both the operating surgeon, Dr. Melvyn Gelch, and another treating physician, Dr. Richard M. Bianco, determined that, notwithstanding the surgery, employee remained permanently but partially disabled as a result of his 1991 work-related injury. Pursuant to a memorandum of agreement, employee began receiving total-disability benefits as of July 29, 1991. Thereafter, employer petitioned to review this award, alleging that employee could return to light-duty work. Eventually, the parties entered into a consent decree that discontinued employee's total-disability benefits as of December 13, 1994, and awarded employee permanent partial-disability benefits. Shortly after entering into this consent decree, employee filed a petition to review in February, 1995, alleging that he was entitled to total-disability

---

**2.** The 1992 amendment, P.L.1992, ch. 31, § 5, states in relevant part, "In all other cases, total disability shall be determined when an employee has reached maximum medical improvement, and when the employee's injury precludes the employee from performing his or her regular job, or the employee is unable to secure alternative employment on account of the employee's injury, age, sex, education, background, abilities or training." It is im-portant to note, however, that the 1992 edition of the Public Laws inadvertently published an incorrect version of Chapter 31. The correct version, printed in the 1994 Public Laws, containing the "manifest injustice" provision and the shift in burden of proof to the employer, should have been published in the 1992 Public Laws volume. *See* P.L.1994, vol. IV. p. 1729, 1746 compiler's notes.

benefits based upon § 28–33–17(b)(2).[3] The parties thereafter stipulated that employee's alleged entitlement to total-disability benefits pursuant to the "odd-lot doctrine" was the "sole issue" before the court.

During the March 1996 trial, both employee and a vocational consultant testified; the depositions of Dr. Bianci and Dr. Gelch were also admitted in evidence. At the close of the hearing, the trial judge stated that "this case involved the first time that I have been confronted with the provision of Section 28–33–17(b)." After reading aloud § 28–33–17(b)(2), the trial judge engaged counsel in the following colloquy:

"[JUDGE:] That's strange language, and as I'm going to have to read all of these depositions before I can render my decision in this matter, I would appreciate it if both sides would give me memorandum on this matter on their positions *particularly how this subsection should be construed,* * * *. So how much time do you think you need?

"MR. CONTE: Three weeks, Your Honor.

"JUDGE: Sure. No problem. Ms. Giannini.

"MS. GIANNINI: I will respond to my brother's Your Honor, if he's going to have three weeks, I would ask for a couple of weeks after that.

"MR. CONTE: No, Your Honor.

"JUDGE: Well, we'll continue this matter for memo, pending receipt of memos.

"(HEARING CONCLUDED)"
(Emphasis added.)

The employee raised no objection at this time to the judge's request for memoranda on how § 28–33–17(b)(2) should be construed in this case. Nor does the record contain any indication that employee ever contended to the trial judge that § 28–33–17(b)(2) need not be construed at all in this case because it was completely inapplicable to his claim in that his injury preexisted the amendment to the act that added this new subsection. In August 1996, after the trial judge had received both parties' memoranda, the parties stipulated that employee's petition would be amended to allege that he was totally disabled as a matter of law pursuant to the "odd-lot doctrine" and, therefore, he was entitled to receive total-disability benefits.

Thereafter, the trial judge reviewed the evidence presented at trial, considered the deposition testimony of the doctors, reviewed the trial memoranda of the parties, and found that employee qualified for total-disability benefits as an odd lot in the labor market. In his decision the trial judge determined that the "1992 amendment *did not create* or establish a *new* entitlement to benefits, but merely defined, in statutory form, the criteria for application of th[e odd-lot] doctrine." He further determined that "the 1992 amendment is procedural in nature, and is applicable to Lombardo's 1991 injury." Notwithstanding this finding, the judge held that "*both* the [preamendment] case law criteria and the statutory criteria are germane in this case." He then ruled that employee qualified for odd-lot compensation benefits.

The employer duly appealed this decree to the Appellate Division where a three-judge panel reversed the trial judge. The employee did not, however, file a cross-appeal concerning the trial judge's decree that § 28–33–17(b)(2) applied to the determination of his odd-lot status. And the record contains no indication that he argued to the panel the inapplicability of § 28–33–17(b)(2) to his odd-lot claim. The panel ruled that employee failed to allege or prove "manifest injustice" as re-

**3.** The employee's petition actually specified G.L.1956 § 28–33–17(b)(7) based upon the numbering of the statute in place at that time.

quired by § 28–33–17(b)(2). Noting that the General Assembly had failed to define "manifest injustice," the panel concluded that this statutory language required the disabled employee to prove that, in light of his or her own particular economic circumstances and inability to find regular work, it would be manifestly unjust to deny the employee total-disability benefits. Because employee had neither alleged nor made any such showing, the panel concluded that the trial judge had erred in awarding such benefits to this employee. It further found that the trial judge was clearly wrong in relying upon the testimony of a vocational consultant who not only was unfamiliar with the deposition testimony of the treating physicians, (both of whom had cleared employee for light-duty-sedentary work), but whose expert testimony, the panel determined, was unpersuasive vis-à-vis employee's alleged inability to obtain alternative employment. Accordingly, the panel reversed the trial judge, holding that employee had failed to qualify for total-disability benefits under the odd-lot doctrine as it had been codified by § 28–33–17(b)(2). We granted employee's petition for a writ of certiorari to review this determination.

## Analysis

■ Ever since the *Lupoli* decision, the common-law odd-lot doctrine has served to complement the WCA's specific total-disability provisions. The General Assembly, however, significantly altered the common-law odd-lot doctrine when it amended the WCA in 1992. As stated above, this amendment shifted the burden of proof in such cases from the employer to the employee to prove the requisite elements for establishing the employee's odd-lot status in any given case. *Compare* P.L.1992, ch. 31, § 5 ("total disability shall be determined when an employee proves * * * that he or she is unable * * * to perform his or her regular job and is unable to perform any alternative employment") *with Lupoli*, 43 R.I. at 304, 111 A. at 768 ("the burden is on the employer, the mov-

ing party, to show that [the] work[er] can get a job"). The General Assembly also added language indicating that the trial judge must determine that "manifest injustice would otherwise result" if the employee is not awarded total-disability benefits. P.L.1992, ch. 31, § 5. In our opinion, the General Assembly intended both to codify the former common-law odd-lot doctrine and yet to modify it in certain important respects, as set forth in § 28–33–17(b)(2).

■ Because employee affirmatively invoked the provisions of § 28–33–17(b)(2) when he petitioned for total-disability benefits in 1995 and asked for relief under that statute, we hold that he cannot now claim for the first time on certiorari that this statute's burden-of-proof and "manifest injustice" requirements are inapplicable to his situation in that his particular work-related injury occurred before the 1992 effective date of the WCA amendment that added these new requirements to § 28–33–17(b)(2). Although employee later amended his petition to allege that he was totally disabled as a matter of law pursuant to the odd-lot doctrine, he never abandoned his original invocation of § 28–33–17(b)(2) as the basis for the relief he was requesting. Moreover, the record contains no indication that he ever suggested to the trial judge or to the Appellate Division, as he does to us now, that § 28–33–17(b)(2) was inapplicable to his situation because his disabling injury predated the enactment of this WCA provision; nor did he appeal from the trial judge's ruling that § 28–33–17(b)(2) was indeed applicable to his odd-lot claim.

■ Merely by stipulating that his petition would be amended to allege total disability pursuant to the odd-lot doctrine, employee did not thereby signal his abandonment of § 28–33–17(b)(2) as the basis for the relief he was requesting. Thus, at the conclusion of the hearing, when the trial judge expressly advised the parties that this would be the first time that he

would be construing § 28–33–17(b)(2), and that he would need their help in the form of post-trial memoranda in doing so, employee never noted any objection he may have had to the trial judge's construing § 28–33–17(b)(2) in this case. Although the parties' post-trial memoranda have not been provided to us by petitioner and they are not otherwise part of the record in this case, we have no indication whether petitioner ever noted any objection there or elsewhere to the trial judge's decision to apply § 28–33–17(b)(2) to his odd-lot claim, just as employee had requested the court to do when he first petitioned for total-disability benefits. Without petitioner having noted his objection on the record to the trial judge's ruling applying this statute to his odd-lot claim, we are barred from setting aside or modifying this aspect of the Appellate Division's decree. *See* G.L.1956 § 28–35–30. Section 28–35–30 provides, in pertinent part:

> "Upon petition for certiorari, the supreme court may affirm, set aside, or modify any decree of the appellate [division] of the workers' compensation court only upon the following grounds:
>
> \* \* \*
>
> (3) That the appellate division erred on questions of law or equity, *the petitioner first having had his objections noted to any adverse rulings made during the progress of the*

*hearing at the time the rulings were made, if made in open hearing and not otherwise of record."* (Emphasis added.)

Further, employee's stipulation that employee's odd-lot status was the only issue before the court was inadequate to alert the trial judge that employee was now reversing field and contending that § 28–33–17(b)(2) was inapplicable to him because of his prior-existing injury—especially in light of his original petition that expressly invoked this statute as the basis for the relief that employee was requesting. Indeed, there is no inherent inconsistency in employees petitioning the trial court for a determination of their status under the odd-lot doctrine and also maintaining that relief should be afforded to them under § 28–33–17(b)(2) because this statute effectively subsumes the same factual circumstances and legal principles that would have triggered odd-lot coverage under the preamendment common law. As a result, we are of the opinion that employee has waived any claim that § 28–33–17(b)(2) was inapplicable to his request for total-disability benefits.

■ In so holding, we do not depart from the general workers' compensation rule that an employee's rights to compensation "are governed by the law in force on the date of his [or her] injury." *State v. Healy*, 122 R.I. 602, 606, 410 A.2d 432, 434 (1980).[4] Rather, we adhere to an even more

---

4. When it amended the Workers' Compensation Act in 1992, the General Assembly indicated that the amendments to § 28–33–17 were to have prospective effect only. Public Laws 1992, ch. 31, § 31 states in relevant part:

"This act shall take effect upon passage and shall not abrogate or affect substantive rights or pre–existing agreements, preliminary determinations, orders or decrees, provided, however, that all procedural provisions, shall be applicable retroactively, regardless of the date of injury, to all employees, employers, insurers, and other parties or persons, except where otherwise specifically indicated. *Except as specifically provided, amendments in this act to the follow-*

*ing sections of chapters 28–33 and 28–34 shall apply only to those injuries occurring on or after the date of passage of this act*: \* \* \* (5) *28–33–17* (Weekly Compensation for Total Incapacity) \* \* \*." (Emphasis added.)

The published version of the Public Laws, P.L. 1992, ch. 31, has only twenty–nine sections. However, the certified copy of the statute maintained in the archives office of the Secretary of State has thirty–one sections, culminating in section thirty–one. This enrolled copy is the official version of the statute as enacted by the General Assembly and signed by the governor. In addition to § 28–33–17, the other sections enumerated therein that "shall apply only to those injuries occurring on or after the date of passage of this

basic proposition, one that constitutes the fundamental rule of appellate review in all workers' compensation cases: namely, we cannot set aside or modify any decree of that court—even on questions of law or equity—without "the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record." Section 28–35–30(a)(3). *See also Corry v. Commissioned Officers' Mess (Open)*, 78 R.I. 264, 266, 81 A.2d 689, 690 (1951) (holding that the employer was precluded from claiming there was no accident within the purview of the WCA where only the employee appealed from an initial decree in the employer's favor based on the finding that the accident was not work related). Here, not only is the record devoid of any objection whatsoever by employee to the trial judge's ruling applying § 28–33–17(b)(2) to his odd-lot claim, but it appears to us that, to the extent the trial judge and/or the Appellate Division erred in applying this statute to employee's odd-lot claim, they did so because employee

affirmatively had requested the trial court to award him such relief under the very statute he now claims to be inapplicable. Because employee never adequately or clearly noted any abandonment of his original invocation of § 28–33–17(b)(2) nor voiced any objection to the court's application of this statute to his claim before either the trial judge or the Appellate Division, he will not be allowed to take a contrary position before this Court.

 For an employee to qualify for odd-lot status under § 28–33–17(b)(2), the employee must prove that he or she is unable to perform his or her regular job *and* any alternative employment,[5] taking into account his or her age, education, background, abilities, and training. This statutory test incorporates and preserves the purpose of the traditional odd-lot doctrine: to avoid the "manifest injustice" that otherwise would result if permanently but partially disabled, odd-lot employees—workers who, as a practical matter, are unemployable on a regular basis—were

act," that is, on or after May 18, 1992, were as follows: §§ 28–33–4, 28–33–7, 28–33–8, 28–33–10, 28–33–18, 28–33–20, 28–33–25, 28–33–34.1, 28–33–45, 28–33–46, 28–33–47, 28–34–4, 28–34–6, and 28–35–57. (Section 28–35–57 is enumerated even though the preceding language refers only to specific sections of chapters 28–33 and 28–34.) The official version of the statute as enacted by the General Assembly and signed by the governor may also be found at P.L. 1994, vol. IV. p. 1729–1808. See footnote 2, *supra*.

5. We note that the statute specifically requires employees to prove not only that they cannot perform their regular job but also "any *alternative* employment." Section 28–33–17(b)(2). (Emphasis added.) By using the word "alternative" the General Assembly, we conclude, intended to preserve the common-law understanding of what type of work-related employee disability qualifies for odd-lot treatment. Therefore, even though the employee could conceivably do some light, sporadic, or intermittent work, the employee still should be able to establish odd-lot status if he or she can prove that such employment does not constitute a practical or regular alternative to the employee's former job. In adopting this interpretation, we follow the majority rule that

"total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 83.01 at 83–3 (1999); *accord Olneyville Wool Combing Co. v. Di Donato*, 65 R.I. 154, 13 A.2d 817 (1940); *see also Bertsch v. Varnum Lumber & Fuel Co.*, 303 Minn. 545, 228 N.W.2d 228, 229 (1975) (holding that " 'sporadic competence, occasional, intermittent, and much limited capacity to earn something, somehow, does not reduce what is otherwise total to a partial disability' "). Nevertheless, to qualify for odd-lot treatment, employees cannot satisfy the statutory test merely by proving their partial disability constitutes a "material hindrance" to obtaining alternative employment. *See* § 28–33–18.3 (allowing partial-disability benefits to continue beyond the 312 week cutoff if the employee can show that his or her partial incapacity constitutes a material hindrance to obtaining employment suitable to his or her limitation). Rather, the employees must show that they are unable, as a practical matter, to perform both their regular jobs and any alternative employment.

not awarded the same disability benefits as permanently and totally disabled employees would receive. *See Di Donato,* 65 R.I. at 157–58, 13 A.2d at 818–19. Indeed, if permanently but partially disabled employees are unable to perform their regular job and any alternative employment (after taking into account the statutory factors), then the trial judge should find that it would be manifestly unjust not to award such employees total-disability benefits. Section 28–33–17(b)(2) therefore, permits permanently but *partially* disabled employees to be considered as if they were permanently and *totally* disabled for the purpose of collecting compensation benefits if they meet the statutory prerequisites for qualification.

■ Therefore, when permanently but partially disabled employees show that they are unable on account of their work-related injuries to perform their regular jobs and any alternative employment, we hold that the trial judge should find that "manifest injustice" would otherwise result if total-disability benefits are not awarded to such employees. Although this new and undefined statutory concept was not referenced by the name of "manifest injustice" when the common-law odd-lot doctrine was in force, we construe "manifest injustice" to exist when, considering the totality of the specific statutory circumstances affecting a particular employee's ability to find and perform work (namely, the employee's age, education, background, abilities, and training), the employee's permanent-but-partial disability renders him or her incap-

able of returning to his or her regular job and of securing and performing alternative employment. Given proof of such circumstances, the employee, as a practical matter, is in no better position workwise than if he or she were permanently and totally disabled from work. If, on the other hand, the employee is able to return to his or her regular job or to secure and perform suitable-alternative employment notwithstanding his or her permanent-and-partial disability, then no manifest injustice would result in denying such benefits to the employee.[6]

■ As a result, we hold that the panel acted within its powers in determining that employee failed to carry his burden of proof on this manifest-injustice issue. Having concluded that the trial judge was clearly wrong in relying upon the expert opinion of employee's vocational consultant, the panel was free to make its own factual findings on this issue. Indeed, when a panel finds that the trial judge was clearly wrong or misconceived or overlooked material evidence, it is not bound to accept any such findings of the trial judge, but may undertake a *de novo* review of the evidence, *see Blecha v. Wells Fargo Guard–Company Service,* 610 A.2d 98, 102 (R.I.1992), and draw its own factual conclusions from the record, which we will uphold if there is support in the record to justify those determinations. *See Gaines v. Senior Citizens Trans., Inc.,* 471 A.2d 1357, 1358–59 (R.I.1984); *Moretti v. Tu-*

---

6. Contrary to the panel, we hold that the injured employees' savings and other economic benefits derived from non-employment related sources (for example, their assets, net worth, non-job-related income from other sources, or their ability to earn a living by means other than employment), are irrelevant to this determination. *See* § 28–33–21 (stating "[n]o savings or insurance of the injured employee * * * shall be taken into consideration in determining the compensation to be paid, nor shall benefits derived from any other source than the employer be considered in fixing the compensation * * * "). We note that, like Rhode Island, other jurisdictions

also disregard certain non-employment-related economic factors when awarding workers' compensation benefits for permanently and totally disabled employees. *Compare* § 28–33–21 *with e.g., Armstrong v. Allstate Insurance Co.,* 135 Ga.App. 278, 217 S.E.2d 486 (1975) (holding that income from purchased convenience store would not necessarily reduce disabled employee's benefits), *and Chatfield v. Industrial Accident Board,* 140 Mont. 516, 374 P.2d 226 (1962) (receiving income from investment in dairy farm would not reduce benefits). *See generally* Judith Higgs, *Permanent Total Disability and the Odd Lot Doctrine,* 35 Drake L.Rev. 689, 697 (1986).

*rin, Inc.,* 112 R.I. 220, 223, 308 A.2d 500, 502 (1973).

The panel in this case rejected the trial judge's ruling that the testimony of employee's vocational consultant [7] was uncontradicted, probative, and persuasive because it believed that conclusion was clearly wrong in light of what it considered to be the inadequate factual foundation that the expert used in rendering his opinions. The panel also noted that the trial judge failed to indicate whether he had considered certain key aspects of employer's cross-examination of this expert witness. Such cross-examination, according to the panel, called into serious question the reliability of the vocational consultant's various expert opinions. In particular, the panel noted that the consultant believed that employee's ninth-grade education would not contribute to his chances of vocational rehabilitation, yet the consultant admitted on cross-examination that this was his own unresearched theory, arrived at without any relevant testing performed on employee and without any other reliable support to justify such a conclusion. The panel also found that the consultant's opinion that employee had no transferable skills was similarly unsupported by any testing or vocational surveys. Finally, the panel noted that the consultant did not review either of employee's own doctors' depositions before he testified—both of whom had cleared employee for light-duty-sedentary work.

This Court has held that uncontradicted testimony may not be rejected arbitrarily. *Hughes v. Saco Casting Co.,* 443 A.2d 1264, 1266 (R.I.1982). However, such testimony "may be rejected if it contains inherent improbabilities or contradictions that alone or in connection with other circumstances tend to contradict it. Such testimony may also be disregarded on credibility grounds as long as the factfinder clearly but briefly states the reasons for rejecting the witness' testimony." *Id.* (citing *Correia v. Norberg,* 120 R.I. 793, 391 A.2d 94 (1978)). Moreover, "matters of factfinding are vested exclusively by the Legislature in the Workers' Compensation [Court]." *Bagaglia v. Bud Industries,* 438 A.2d 667, 670 (R.I.1981). Accordingly, the panel acted within its power when it concluded that the trial judge was clearly wrong in relying upon the testimony of employee's vocational consultant—especially when the trial record contains support for the panel's reasoning on this point. Absent allegations of fraud, this Court will uphold the factual conclusions of such an appellate panel if there is any competent evidence to support its findings. *Hughes,* 443 A.2d at 1266. In this case, we cannot say that the panel's decision to reject this expert's testimony as unreliable because of its shaky factual foundation was devoid of support in the record. Therefore, we hold that the panel acted within its authority when it concluded that the trial judge was clearly wrong in relying upon the vocational consultant's testimony. Consequently, the panel correctly determined that employee failed to carry his burden of proof in showing that he was unable to perform any alternative employment, and, therefore, that "manifest injustice" would result if he were not paid total-disability benefits.

---

7. The parties do not dispute that the vocational consultant qualified as an expert pursuant to Rule 702 of the Rhode Island Rules of Evidence. However, the panel was entitled to conclude that the vocational consultant's opinion should not have been relied upon based upon the inadequate data that he gathered in preparation for making his evaluation because it was "merely the witness' personal opinion based upon nothing more than an assumption of facts which were explicitly contradicted by the medical evidence." The panel acted within its authority when it considered this evidence incompetent based on the expert's lack of the necessary foundation to render an expert opinion. *See Montuori v. Narragansett Electric Co.,* 418 A.2d 5, 11 (R.I. 1980) (stating that in order to be considered expert testimony, such evidence must provide the factfinder with a sufficiently probative basis to opine or determine the issue in question).

We also note that the provisions of § 28–33–18.3 (allowing for the continuation of partial–disability benefits beyond the 312 week cutoff of benefits per § 28–33–18(d)) are available to a partially disabled employee like this petitioner if he or she can show "that his or her partial incapacity poses a material hindrance to obtaining employment suitable to his or her limitation." The existence of this provision, however, serves to underscore a key distinction drawn by the WCA between qualifying for continued-partial-disability benefits and qualifying for total-disability benefits via proof of odd-lot status: namely, to qualify under the latter WCA provisions, it is not enough that partially disabled employees are able to establish that their disability poses a material hindrance to obtaining employment suitable to their limitations. Rather, to qualify for total, as opposed to continued-partial-disability benefits, partially disabled employees must clear an even higher statutory hurdle: they must show not just that their partial incapacity materially hinders them in their efforts to obtain suitable-alternative employment, but also that they are actually unable to perform their regular job and any alternative employment, such that it would be manifestly unjust to deny them total-disability benefits.

## Conclusion

For the reasons stated above, we deny the employee's petition for certiorari, affirm the panel's decree denying total-disability benefits to this employee, quash the writ previously issued, and remand this case to the Workers' Compensation Court with our decision endorsed thereon.

GOLDBERG, Justice, dissenting.

I respectfully dissent. The Court today departs from its long-standing rule that statutory amendments to Rhode Island's Workers' Compensation Act are given prospective effect unless the Legislature specifically indicates otherwise or in the rare instance in which the amendment is either remedial or procedural and its provisions do not affect the substantive rights of the parties. Neither exception applies in this case.

In 1991, in response to concerns that the state's workers' compensation system was in crisis, the General Assembly overhauled the system and enacted numerous substantive changes to the Workers' Compensation Act (the act). Among those changes was a codification of the long-standing common-law doctrine of the odd-lot employee. Heretofore an employee with no transferable skills who as a result of a work related injury remained unable to perform his or her customary job but was deemed physically capable of doing some type of work would not suffer a diminution in his benefits unless the *employer* established that the worker actually could get a job. *Olneyville Wool Combing Co. v. Di Donato*, 65 R.I. 154, 13 A.2d 817 (1940). Thus, in seeking to obtain a diminution in the employee's benefits, the employer bore the burden of proving that the employee was not only physically able to maintain a job but also that, taking into consideration his or her education, past employment and background, coupled with other transferable skills, there was a job the employee actually could perform.

When the General Assembly codified the odd-lot doctrine in G.L.1956 § 28–33–17(b)(7) (now § 28–33–17(b)(2)), it imposed two substantive changes: it relieved the employer of the burden of proving that the employee could actually obtain employment and it required the employee to demonstrate not only his or her inability to work, but also that a reduction in benefits from total incapacity to partial would amount to a manifest injustice. Obviously, as the majority acknowledges, these are substantive changes to this fixed doctrine that may not be given retrospective application without explicit direction from the Legislature.

We have long recognized that the rights of the employee in compensation cases "are governed by the law in force on the

date of his injury." *State v. Healy*, 122 R.I. 602, 606, 410 A.2d 432, 434 (1980); *Ludovici v. American Screw Co.*, 99 R.I. 747, 748, 210 A.2d 648, 649 (1965). "A statute may be applied retrospectively only if it appears by strong clear language or necessary implication that the Legislature intended the statute to have retroactive effect." *Emmett v. Town of Coventry*, 478 A.2d 571, 572 (R.I.1984). This rule applies as well to remedial statutes that operate to effect substantive rights. *Healy*, 122 R.I. at 607, 410 A.2d at 435; *see also Cipriano v. Personnel Appeal Board*, 114 R.I. 141, 330 A.2d 71 (1975).

Recently in *Salazar v. Machine Works, Inc.*, 665 A.2d 567 (R.I.1995), this Court had occasion to pass upon the question of the retrospective application of the recent amendments to the act, and adhered to our long-standing rule that amendments to the act that effect substantive rights to compensation or the amount of compensation must be applied prospectively. *Id.* at 568 (citing *Healy* and *Emmett, supra*). In *Healy,* the employer, the State of Rhode Island, sought to take advantage of a recently enacted remedial provision of the act that allowed for the unilateral termination of a compensation agreement in workers' compensation if the employee had returned to work and was receiving earnings equal to or in excess of wages earned at the time of the injury. Although this amendment provided a remedy heretofore unavailable to an employer and was enacted in direct response to our holding in *Walker v. Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d 173 (1978),[8] we determined that it affected the employee's substantive right to benefits and only could be applied prospectively, and reiterated our established rule that an employee's right to compensation must be determined according to the workers' compensation statutes existing at the time of the injury. "A statute enacted thereafter cannot be applied retroactively to modify a preexisting compensation right which has already vested in the injured employee." *Healy*, 122 R.I. at 608, 410 A.2d at 435. We concluded that to give retrospective application to this remedial statute would impair and violate rights that vested in the employee at the time of the injury. Thus, I do not believe we should deviate from our long-standing practice.

Additionally, I disagree with the majority's reason for concluding that the employee is estopped from arguing the inapplicability of the statute because he "affirmatively invoked the provisions of § 28–33–17(b)(2) when he petitioned for total-disability benefits in 1995 and asked for relief under that statute." This estoppel determination, in my opinion, is unwarranted and works both an injustice upon the employee and ignores the travel of this case. The parties in the Workers' Compensation Court entered into two stipulations, each of which has a bearing on the issue of the employee's so-called waiver. First, while the trial was proceeding, the parties entered into a stipulation on May 8, 1996, that reads in part:

> "[The] [p]arties agree to the following:
>
> * * * "4. The *sole* issue before this court in 95–1339 is whether or not the 'odd lot doctrine' applies to this employee and whether or not benefits should be paid at a rate for total disability or partial disability." (Emphasis added.)

The second, more critical, stipulation was entered into on August 23, 1996, months after the evidence was closed and well after the parties were directed to submit memoranda relative to the issues

---

**8.** In *Walker v. Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d 173 (1978), this Court decided that no employer may unilaterally suspend payment of compensation benefits but must obtain affirmative relief from the Workers' Compensation Court pursuant to the procedure available by the act. The Legislature responded by enacting the so-called "double dipping" statute, G.L.1956 §§ 28–33–17.1 and 28–33–18.1 as found in P.L.1978, ch. 232. Although obviously remedial, in *Healy* we declined to give it retrospective effect.

before the trial judge. This stipulation reads as follows:

> "The Petitioner's *pleadings* shall be amended to allege total disability pursuant to the 'odd lot doctrine.' "The evidence *already presented* shall be applied to this amendment." (Emphasis added.)

Thus, it is obvious that the employee amended his petition for review and abandoned his reliance on the statute or at the least he signaled his alternative reliance on the common-law doctrine. As of August 23, 1996, he alerted the trial judge and opposing counsel that he was alleging total disability based on the common law "odd-lot doctrine" and was no longer relying upon the provisions of § 28–33–17(b)(2). Therefore, I do not agree that he is claiming "for the first time on certiorari that this statute's burden-of-proof and 'manifest injustice' requirements were inapplicable to his situation." Although acknowledging that the employee amended his pleadings in this case, the majority fails to accord any import to this significant stipulation that was entered into between the parties with the approval of the trial judge and faults the employee for never abandoning his original invocation of the statute, maintaining that he never "suggested to the trial judge or to the Appellate Division, as he does to us now, that § 28–33–17(b)(2) was inapplicable to his situation." I do not agree with this reading of the record in this case, and am satisfied that the employee did, in fact, alert the trial judge and opposing counsel of his reliance on the "odd-lot doctrine." Further, I cannot fault the employee, as does the majority, for not taking an appeal from the decision of the trial judge in this case; he was, after all, the prevailing party. Additionally, this Court is not privy to what the employee may or may not have argued to the Appellate Division relative to the applicability or the non-applicability of the statute. Therefore, I cannot agree with the majority that the employee, on the basis of this record, has "waived any claim that § 28–33–17(b)(2) was inapplicable to his request for total disability benefits." Such a conclusion fails to do justice to the employee and this Court's long-standing tradition of giving retrospective application to substantive amendments to the Workers' Compensation Act. Accordingly, I believe the Appellate Division erred in applying the more burdensome provisions of § 28–33–17(b)(2) to this employee.

Furthermore, I am satisfied that once the burden of proving that the employee was capable of performing some type of employment and identifying a job he could, in fact, perform is appropriately shifted to the employer in accordance with the common-law doctrine, it is obvious that the decision of the Appellate Division must be reversed. The parties to this dispute have stipulated that the employee remains permanently partially disabled. Thus the employee has met his burden of proving that he still suffers from effects from the work-related injury. It is the employer who must demonstrate that this employee is capable of joining the ranks of the gainfully employed and that there is, in fact, employment available that he can carry out.[9] Although the employer attempted a vigorous cross-examination of the employee, it failed to identify any employment the worker was capable of performing, and was only able to establish that he was capable of balancing a simple checkbook.

Therefore, I conclude that this case represents a classic example of the odd-lot in the labor market who, under the law existing at the time of his injury, should not

9. It was suggested by the respondent at oral argument that were the employee to be found to be an odd-lot in the labor market, he would "receive a free lifetime pension." I respectfully suggest that this characterization is inappropriate and is not the case for a fifty-nine-year-old laborer who finished the ninth grade in 1952, has no education or employable skills, is permanently partially disabled, cannot stand or sit for long intervals, and cannot engage in twisting, turning or lifting anything heavier than fifteen pounds, and no lifting on a repetitive basis.

suffer a reduction in benefits unless the employer can establish that notwithstanding his permanent partial disability he is capable of working, and the employer identifies the particular alternative employment the employee can actually perform. Consequently, I dissent.