**CITY OF PAWTUCKET**

v.

**Michael PIMENTAL.**

**No. 2007–106–M.P.**

Supreme Court of Rhode Island.

Dec. 15, 2008.

---

Kevin Reall, for Plaintiff.

Alfredo T. Conte, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

We issued a writ of certiorari to review a decision by the Appellate Division of the Workers' Compensation Court (Appellate Division) upholding the reduction of Michael Pimental's workers' compensation benefits under G.L. 1956 § 28–33–18(b).[1] The Appellate Division affirmed the trial judge's ruling that the partially incapacitated employee's refusal to undergo surgery that had a reasonable likelihood of improving his condition was an insufficient reason for forestalling a "maximum medical improvement" (MMI) determination and the attendant reduction of benefits.[2]

---

1. General Laws 1956 § 28–33–18(b) provides in pertinent part:

   "[W]here an employee's condition has reached maximum medical improvement and the incapacity for work resulting from the injury is partial, while the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to seventy percent (70%) of the weekly compensation rate as set forth in subsection (a) of this section.

   The court may, in its discretion, take into consideration the performance of the employee's duty to actively seek employment in scheduling the implementation of the reduction."

2. General Laws 1956 § 28–29–2(8) provides:

   " 'Maximum medical improvement' means a point in time when any medically determinable physical or mental impairment as a result of injury has become stable

Mr. Pimental seeks reversal of the final decrees entered by the Appellate Division, contending that, because he was a candidate for further surgery, he had not reached "maximum medical improvement." He also argues that the trial judge violated his due-process rights when the trial judge reduced his benefits before holding a full trial on the merits of the initial MMI determination. For the reasons set forth in this opinion, we affirm the final decrees of the Appellate Division.

# I

## Facts and Procedural History

Mr. Pimental suffered a herniated disk while performing his duties as a sanitation engineer for the City of Pawtucket (the city). On June 20, 2001, he entered into an agreement with his employer in which he began receiving workers' compensation benefits for partial incapacity. Mr. Pimental underwent back surgery performed by Samuel Greenblatt, M.D. on December 6, 2001, and he received total disability benefits during a recovery period that lasted approximately ten months. On October 8, 2002, the Workers' Compensation Court determined that his condition had improved to partial disability and his benefits were reduced accordingly. The surgery was, by all accounts, unsuccessful and a subsequent MRI revealed a large recurrent disk herniation. Discouraged by his lack of improvement, Mr. Pimental delayed undergoing a second recommended surgery while he sought a second opinion from Mark A. Palumbo, M.D. Doctor Palumbo also recommended surgery but cautioned that "surgical treatment would likely provide [Pimental] with only partial relief of his long term symptomology." Based on the results of his first surgery and the invasive nature of the recommended procedure, Mr. Pimental declined to undergo a second surgery to relieve his back pain. Mr. Pimental also attempted physical therapy but discontinued the treatment after two sessions because he felt it made his condition worse.

On January 20, 2004, the city petitioned the Workers' Compensation Court for a review of Mr. Pimental's status, contending that he had attained "maximum medical improvement." On August 3, 2004, a trial judge entered a pretrial order finding that Mr. Pimental had reached MMI, and the employee timely filed a claim for trial.[3] On September 10, 2004, the city filed a second petition seeking a 30 percent re-

---

and when no further treatment is reasonably expected to materially improve the condition. Neither the need for future medical maintenance nor the possibility of improvement or deterioration resulting from the passage of time and not from the ordinary course of the disabling condition, nor the continuation of a pre-existing condition precludes a finding of maximum medical improvement. A finding of maximum medical improvement by the workers' compensation court may be reviewed only where it is established that an employee's condition has substantially deteriorated or improved."

**3.** General Laws 1956 § 28–35–20(c) states:
    "At the pretrial conference, the judge shall make every effort to resolve any controversies or to plan for any subsequent trial of the case. The judge shall render a pretrial order immediately at the close of the pretrial conference. The pretrial order shall be set forth in a simplified manner on forms prescribed by the workers' compensation court. It may reflect any agreements reached between the parties, but shall grant or deny, in whole or in part, the relief sought by the petitioner. The pretrial order shall be effective upon entry. Any payments ordered by it including, but not limited to, weekly benefits, medical expenses, costs, and attorneys' fees, shall be paid within fourteen (14) days of the entry of the order."

duction of Mr. Pimental's benefits in accordance with § 28–33–18(b). The trial judge entered a pretrial order reducing Mr. Pimental's benefits to 70 percent on October 7, 2004. He delayed the effective date of that order, however, until March 1, 2005.

On March 2, 2005, Mr. Pimental filed a motion to dismiss the city's petition to reduce his benefits, arguing that the petition was filed prematurely because the determination of his maximum-medical-improvement status had yet to be heard at trial and thus had not ripened into a final decree. The trial judge denied the motion to dismiss on March 10, 2005.

After a consolidated trial on both the MMI and benefits-reduction petitions, the trial judge affirmed both pretrial orders on May 4, 2005. The trial judge relied on the deposition testimony of James E. McLennan, M.D., who had examined Mr. Pimental on behalf of his insurer and concluded that he had attained "maximum medical improvement." Doctor McLennan examined Mr. Pimental in October 2002 and again more than a year later, in December 2003, and noted that his condition had not improved. He described defendant as "only mildly disabled," and stated that he thought surgery to remove protruding disk material that was aggravating Mr. Pimental's nerve might improve his condition. Doctor McLennan testified, however, that in the absence of such surgery, it was unreasonable to expect his condition to improve. Thus, as a result of Mr. Pimental's continued refusal to accept surgery, it was his opinion that Mr. Pimental had reached "maximum medical improvement."

Mr. Pimental also testified at the trial and conceded that he had decided not to have a second surgery because he felt the first operation had actually worsened his condition. He also admitted that he had not sought employment since his injury and that he was collecting Social Security disability benefits.

On March 19, 2007, the Appellate Division affirmed the trial court's decision. The court declined to reverse its established position, first articulated in *Robin Rug v. Manteiga*, W.C.C. No. 93–4363 (App.Div. Aug. 16, 1994), that the mere possibility of improvement, when the employee refuses to undergo the recommended surgical procedure, does not preclude a finding of MMI. *City of Pawtucket v. Pimental*, W.C.C. 04–6055, W.C.C. 04–460, at *3 (App.Div. Mar. 19, 2007). It held that "[t]o adopt the employee's position that a surgical candidate can never be found to have reached MMI, would create a special protected class of injured workers who, by their own decisions not to have the surgery, can remove themselves from certain provisions of the Workers' Compensation Act." *Id.* at *8. The Appellate Division also rejected Mr. Pimental's contention that the trial court erred in not dismissing the city's petition to reduce its workers' compensation payment before the MMI issue had been heard on the merits at a trial. The Appellate Division noted that the relevant statute plainly states that pretrial orders are effective upon entry and reasoned that allowing the trial judge to reduce payments while an appeal was pending was consistent with the General Assembly's purpose of providing prompt relief to parties in workers' compensation disputes. Final decrees were entered on March 19, 2007. Thereafter, Mr. Pimental filed a timely petition for writ of certiorari,[4] which we granted on September 20, 2007.

---

4. Any person aggrieved by a final decree of the Appellate Division may petition the Supreme Court for a writ of certiorari within twenty days from the entry of the final decree. Section 28–35–29(a).

## II

### Standard of Review

■ Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to § 28–35–30. *Rison v. Air Filter Systems, Inc.*, 707 A.2d 675, 678 (R.I.1998). Our review on certiorari "is limited to examining the record to determine if an error of law has been committed." *Matter of Falstaff Brewing Corp. re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I. 1994). "We do not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997); *see also Gregson v. Packings & Insulations Corp.*, 708 A.2d 533, 535 (R.I.1998). We review *de novo*, however, questions of statutory construction. *Rison*, 707 A.2d at 678.

## III

### Discussion

#### A. The "Maximum Medical Improvement" Determination

The central issue in this case is whether a partially injured employee may be found to have attained "maximum medical improvement" when he refuses to undergo surgery that has been recommended to improve his condition. "Maximum medical improvement" as defined by statute is "a point in time when any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to materially improve the condition." G.L. 1956 § 28–29–2(8).

Mr. Pimental contends that by omitting the word "surgery" from this definition, "the Legislature must have intended that injured [e]mployee's [*sic*] who are surgical candidates cannot be found to be at a point of maximum medical improvement." Because surgery can reasonably be expected to improve one's condition, he argues, surgical candidates are shielded from a finding of MMI. He further contends that such a construction remains faithful to the remedial and benevolent purpose of the Workers' Compensation Act. The city argues in opposition that the plain and ordinary meaning of the statutory language does not preclude a finding of MMI for injured employees who decline to undergo recommended surgery.

■ This Court reviews *de novo* questions of statutory interpretation. *Rison*, 707 A.2d at 678. In so doing we strive to establish and to give effect to the intent of the Legislature. *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I.1984). "This is accomplished from an examination of the language, nature, and object of the statute. * * * Additionally, we must give to the words in a statute their plain and ordinary meaning, unless a contrary interpretation is apparent." *Id.*

The Appellate Division has twice had occasion to consider the statutory language at issue in this case. In *Robin Rug v. Manteiga*, W.C.C. No. 93–4363 (App.Div. Aug. 16, 1994), medical evidence indicated that the employee's condition had reached a plateau and that there would be no improvement absent surgery, which the employee refused. *Id.* at *2–3. The Appellate Division upheld a finding of MMI by the trial judge and rejected the employee's argument that the possibility of surgery prevented an MMI determination. *Id.* at *3. If that view were accepted, the Appellate Division reasoned, "any employee by refusing surgery notwithstanding his or her condition could prevent the ultimate finding of maximum medical improvement." *Id.* One member of the three-

judge panel dissented however. *Id.* at \*3–4. He argued that a finding of MMI was inappropriate in light of medical evidence that surgery would improve the employee's condition, stating that the majority's decision would "chill the employee's right to refuse intrusive major surgery." *Id.* at \*4.

In 1995, the Appellate Division reviewed a trial judge's determination that an injured employee had not reached MMI because medical experts indicated that the employee would benefit from knee replacement surgery. *Providence College v. Gemma,* W.C.C. No. 95–1493, at \*2–3 (App.Div. Aug. 19, 1996). The evidence indicated that the employee's condition had reached a plateau and that he had refused to undergo the recommended procedure. *Id.* at \*2. The Appellate Division overturned the trial judge's decision, however, reasoning that "an employee could circumvent a finding of maximum medical improvement by simply refusing surgery." *Id.* at \*3.

■ It is our opinion that the Appellate Division's well-established construction of § 28–29–2(8) "maximum medical improvement" is correct and consistent with the purpose of the Workers' Compensation Act. "Maximum medical improvement" is not a determination that the employee's condition will never improve or decline, nor does it preclude the possibility of future medical interventions entitling the employee to review his MMI status when his "condition has substantially deteriorated or improved." Section 28–29–2(8). Rather, the designation merely identifies the point at which an employee's physical or mental impairment has stabilized and further treatment is not reason-

ably expected to materially improve his condition. The mere possibility that surgery might improve Mr. Pimental's condition does not preclude a finding that he has reached MMI when his refusal to undergo the sole treatment that each of his examining physicians recommended ensures that his condition has, in all reasonable likelihood, become stable. Mr. Pimental has determined the limits of his own recovery and must, therefore, accept the determination that he has attained maximum medical improvement. We concur with the Appellate Division that by refusing the surgery his impairment had become stable and no further treatment was reasonably expected to improve his condition.

■ Furthermore, we are not persuaded by Mr. Pimental's argument that such a construction places him in the position of "having to choose between his physical well-being, versus his, and his family's, financial well-being." Mr. Pimental is free to choose whether to have surgery and, given his poor prognosis and relatively minor impairment, we have no reason to doubt the reasonableness or sincerity of his decision. The mandatory 30 percent reduction of benefits upon attainment of MMI, however, is not a punitive measure; rather it seeks to adjust the worker's benefits once the recovery period has come to an end.[5] The General Assembly clearly has expressed its desire that partially injured workers be encouraged to return to the work force when they have reached maximum recovery. It is not our place to question the wisdom of that judgment. Mr. Pimental continued to receive workers' compensation benefits but, as his active

---

5. In *K–Mart v. Whitney,* 710 A.2d 667, 669 (R.I.1998), we noted that an earlier version of this statute granted wide discretion to the trial judges in reducing benefits when the employee made a "good faith" effort to find employment. In subsequent legislation, however, the General Assembly limited the trial judge's discretion solely to the implementation of the reduction.

recovery period had come to an end, he was entitled to only the reduced benefits specified in § 28–33–18(b). We do not believe Mr. Pimental was ensnared in the catch–22[6] situation that he implies.

■ ■ We also share the Appellate Division's concern that adopting Mr. Pimental's reasoning would allow "an employee [to] circumvent a finding of maximum medical improvement by simply refusing surgery." *Providence College,* W.C.C. No. 95–1493 at *3. We do not believe that the General Assembly could have intended such a result. "[I]t is this [C]ourt's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). We previously have recognized, in *Lombardo v. Atkinson–Kiewit,* 746 A.2d 679, 682 (R.I.2000), that the General Assembly enacted sweeping reforms in 1992 to the Workers' Compensation Act to "eliminate waste and unnecessary costs" and to "swiftly and fairly make appropriate adjustments for employees who are capable of employment." P.L. 1992, ch. 31, § 1. Prior to 1992, § 28–33–18(b) provided that "if the employee proves that he or she has attempted in good faith to obtain employment suitable to his or her limitations and has been unsuccessful, then partial incapacity shall not be reduced." P.L. 1990, ch. 332, art. IV, § 28. The post–1992 revision now requires a 30 percent reduction of benefits upon a determination of maximum medical improvement and reduces the trial judge's discretion to the timing

of that reduction. This constriction of the court's discretionary authority is consistent with the General Assembly's goal "to swiftly and fairly make appropriate adjustments for employees who are capable of employment" and "to motivate return to gainful employment in the work force." Section 28–29–1.2(a)(7). Given the General Assembly's clear mandate to deter waste and abuse, we believe allowing an employee to delay a finding of MMI by refusing to undergo a recommended treatment would frustrate the purpose of the Workers' Compensation Act.

### B. The Pretrial Order Reducing Benefits

■ ■ Mr. Pimental also ascribes error to the trial judge's denial of his motion to dismiss the city's petition to reduce his benefits to 70 percent, thereby allowing the pretrial order of October 7, 2004, to remain in effect. He argues that the reduction of his benefits before he had an opportunity for a full hearing on the issue of "maximum medical improvement," constitutes a deprivation of his due-process rights. His argument calls into question the adequacy of the pretrial procedures of the Workers' Compensation Court. We had occasion to review the constitutionality of a substantially similar pretrial procedure in *John J. Orr & Sons, Inc. v. Waite,* 479 A.2d 721, 723 (R.I.1984), in which we adopted the three-part test articulated by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although we decided *Waite* before the Workers' Compensation Commission became the Workers' Compensation Court, it remains con-

---

**6.** The term "catch–22" derives from a Joseph Heller novel by the same name. Although somewhat difficult to define precisely, it generally refers to a paradoxical rule which creates an illogical or senseless situation in which one is faced with two equally undesirable alternatives.

trolling.[7] In *Waite*, 479 A.2d at 723–24 (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. 893), we identified three factors to be considered in determining whether the pretrial procedure violated due process: "(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the possible value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." When state action threatens to deprive a qualified person of benefits to which he is statutorily entitled, due process concerns are implicated. *See Goldberg v. Kelly*, 397 U.S. 254, 260–62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits implicated due process).

The "pretrial conference" section of the Workers' Compensation Act allows both parties to submit medical evidence and other documentary evidence, to be represented by counsel at the preliminary hearing, and to submit written arguments in favor of or against the proposed order.[8] The judge may, at his or her discretion, enter a preliminary order that "shall be effective upon entry." Section 28–35–20(c). On the specific issue of reduction of benefits under § 28–33–18(b), the trial

judge may delay the implementation of the order after considering the employee's efforts to actively seek employment.

Mr. Pimental argues that the reduction of his benefits before he had the opportunity to fully litigate the MMI determination was a denial of due process. We first must evaluate the private interest at stake in the proceeding. Mr. Pimental's sole interest appears to be the receipt of unreduced workers' compensation benefits until he could be heard at trial. Significantly, the trial judge did not make the October 7, 2004 pretrial reduction order effective until March 1, 2005, a delay of nearly five months. This interregnum afforded Mr. Pimental ample opportunity to perform his "duty to actively seek employment." Section 28–33–18(b). Additionally, in *Mathews*, 424 U.S. at 340, 96 S.Ct. 893, the Court emphasized that the availability of retroactive relief was a strong mitigating factor; we have subsequently applied that reasoning to workers' compensation decisions. *Waite*, 479 A.2d at 724 ("the availability of retroactive relief is a factor to be considered in assessing the potential injury"). In the case at hand, we are satisfied that "the degree and duration of the possible deprivation [did] not rise, in and of itself, to the level of denial of due process." *Id.* at 725.

We next consider "the probable value, if any, of additional or substitute procedural

---

**7.** *See* G.L. 1956 § 28–30–21 ("Wherever in the general or public laws there appear the words, 'workers' compensation commission' it shall read 'workers' compensation court.' ").

**8.** Section 28–35–20(a)–(b) provides:
"(a) Before any case shall proceed to a trial, the judge shall conduct a mandatory pretrial conference within twenty-one (21) days of the date of filing with a view to expediting the case and reducing the issues in dispute to a minimum, notice of which shall be sent by the administrator to the

parties or to their attorneys of record. The conference shall be informal and no oral testimony shall be offered or taken. Any statement then made by either party shall in the absence of agreement be without prejudice, but any agreement then made shall be binding.
"(b) Within a reasonable time of receipt, all medical reports and documentary evidence which the parties possess and which the parties intend to present as evidence at the pretrial conference shall be provided to the opposing party."

safeguards." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Here, we must distinguish between the initial MMI order and the order reducing benefits. A "maximum medical improvement" determination, as the term indicates, is primarily a medical evaluation. The *Mathews* Court distinguished the probative value of oral testimony during a Social Security Administration medical assessment of a person's disability from the Court's earlier discussion in *Goldberg* of the high value of live testimony before terminating welfare benefits. *Compare Goldberg*, 397 U.S. at 269, 90 S.Ct. 1011 (holding that because welfare benefits often rest on matters of credibility and veracity, "written submissions are a wholly unsatisfactory basis for decision"), *with Mathews*, 424 U.S. at 343, 96 S.Ct. 893 (holding that a disability assessment is a "more sharply focused and easily documented decision than the typical determination of welfare entitlement"). A "maximum medical improvement" decision probably will be grounded in the same type of "routine, standard, and unbiased medical reports by physician specialists" that the *Mathews* Court determined would not benefit from allowing oral testimony. *Mathews*, 424 U.S. at 344, 96 S.Ct. 893 (quoting *Richardson v. Perales*, 402 U.S. 389, 404, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Requiring oral testimony at the preliminary hearing will not appreciably reduce the risk of erroneous decision-making, as an employee's credibility is not at issue. *Mathews*, 424 U.S. at 344, 96 S.Ct. 893.

Moreover, as we observed in *Waite*, 479 A.2d at 725, § 28–35–20 "provides for a hearing at which both parties are entitled to be represented by counsel. The statute also provides for the submission of medical reports and other documentary evidence." It is clear to us, as it was to the *Waite* Court, that "the procedures provided for in § 28–35–20 are both fair and reliable." *Waite*, 479 A.2d at 725. A pretrial order becomes effective upon entry under the provisions of § 28–35–20(c). Thus, once the pretrial order determining that Mr. Pimental had reached MMI was entered, the trial judge was required to reduce his benefits in accordance with the mandatory language of § 28–33–18(b) upon petition of the city.

As previously noted, however, the latter statute expressly permits a trial judge to delay implementation of the reduction in benefits by considering the employee's efforts to actively seek alternative employment. This determination assuredly implicates the employee's credibility and seemingly would be aided by allowing the employee to testify before his benefits are reduced. Nevertheless, we are convinced that within the context of Mr. Pimental's case the probable value of any additional procedural safeguards was very slight. We first observe that under § 28–33–18(b) the consideration of an employee's efforts to seek employment, as well as the timing of any reduction in benefits, is fully entrusted to the discretion of the trial judge. Additionally, in this case, the trial judge exercised his discretion in favor of Mr. Pimental by delaying implementation of the pretrial order for a period of nearly five months.[9]

Finally, we must weigh the public interest, including the state's interest in administrative efficiency. As we noted in *Waite*, 479 A.2d at 725, a clear policy goal of the Workers' Compensation Act is the promotion of "expeditious resolution of workers' compensation disputes."[10] We are

9. In light of Mr. Pimental's subsequent testimony at trial that he had not sought employment since his injury, this five-month deferral proved to be most generous.

10. We further note, however, that in *John J.*

mindful that requiring a pre-termination hearing before the modification of workers' compensation benefits would delay the resolution of many disputes, often to the detriment of injured workers seeking immediate benefits, and would likely make the administration of workers' compensation benefits more costly to the taxpayers of Rhode Island. The express purpose of the mandatory pretrial conference is "to expedit[e] the case and reduc[e] the issues in dispute to a minimum." Section 28–35–20(a).

The clear policy behind this laudatory purpose is to promote the "expeditious resolution of workers' compensation disputes," *see Waite*, 479 A.2d at 725, a factor that weighs heavily in the balancing calculus set forth in *Mathews* and *Waite*. After

considering this three-part test, therefore, we hold that the pretrial procedures employed in Mr. Pimental's case did not violate his due-process rights.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the final decrees of the Appellate Division. The papers in the case shall be remanded to the Workers' Compensation Court.

---

*Orr & Sons, Inc. v. Waite*, 479 A.2d 721, 725 (R.I.1984), we were discussing the state's interest in rapidly securing benefits for legitimately injured workers rather than promptly relieving employers of their obligations under the statute.