IRENE CORRY *vs.* COMMISSIONED OFFICERS' MESS (OPEN).

JUNE 15, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is an employee's appeal from a decree of the superior court denying her original petition for compensation under the workmen's compensation act, general laws 1938, chapter 300.

The facts in this case are undisputed.   Petitioner was employed as a receptionist at the Commissioned Officers' Mess (Open), hereinafter called the club, at the Quonset Naval Air Station in this state.   It is clear that in the course of her employment petitioner was permitted to go to any part of the premises, if necessary.   Shortly after starting her work on the morning of August 5, 1948 she went to the ladies' room on the second floor of the club and then, not "feeling too good that day," she walked out onto a nearby terrace believing that if she "got a little bit

of fresh air" she would feel better. The outer edge of the terrace had a railing 35 inches high, beyond which there was a drop of over 40 feet to the ground below. The petitioner, who was described by the trial justice in his rescript as "fairly tall," was wearing shoes with heels about two and one-half inches high on that day. If she were standing against the railing it would reach a point approximately two thirds up on her thigh.

Petitioner, who was the only witness respecting the accident, testified that after standing for a few minutes near the center of the terrace she walked over to the railing but did not lean on it; that her mind then became blank; that she regained consciousness while she was "in the middle of the air"; and that she landed on the ground below, suffering substantial injuries. She also positively denied that she was overcome by the heat of that day, or that she had taken any liquor, or that the occurrence was the result of any willful act on her part. The manager of the club testified that the door to the terrace was unlocked when the club was opened for business; that all employees were entitled to take rest periods both morning and afternoon at no set time; and that the terrace was a permissible and customary place for female employees to go during their rest periods.

Petitioner's appeal concerning the findings in paragraphs numbered 7 and 8 of the decree raises the question of law in this case. In those paragraphs the trial justice in effect found the fall to be an accident, but he denied compensation because in his judgment her injuries did not arise out of and in the course of employment. In view of such finding it is important to note here that, as only the employee appealed from the decree, the employer in the circumstances is now precluded from claiming that there was no accident within the purview of the act on August 5, 1948.

The controlling issue presently before us therefore is whether there was causal connection between petitioner's accidental injury and her employment. It is now generally

so well settled as to require no citation of authorities that an employee is not entitled to compensation if the injury was caused by an untoward happening in no way connected with the employment. While the clear purpose of the act is to relieve distress usually attendant upon injury to an employee by accident arising out of and in the course of employment, it is not the object of such legislation to provide health or accident insurance for every accident that might befall him. An employer is not an insurer. *Hemphill Co.* v. *Provencher,* 74 R. I. 173. Before an injured employee is entitled to the benefits of the act he must establish that the injury arose out of and in the course of the employment. The rules governing the determination of those issues are simple, but considerable difficulty is often encountered in applying them to the facts of a particular case. Such a situation confronts us in the case at bar.

Respondent first contends that since there was legal evidence to support the findings in question we are precluded from disturbing them in the absence of fraud. In urging that contention respondent apparently overlooked the cases of *Lupoli* v. *Atlantic Tubing Co.,* 43 R. I. 299, and *Bacon* v. *United Electric Rys.,* 51 R. I. 84. The *Lupoli* case holds that where the only question before the superior court is as to the *legal effect* of certain admitted facts the question is one of law, which is subject to review on appeal. The *Bacon* case is to the same effect. Those cases are controlling in the case at bar. Here we are not dealing with a finding of fact but with the legal effect of uncontradicted and unimpeached evidence not inherently improbable as to whether petitioner's injury arose out of and in the course of employment within the meaning of the statute. The contention under consideration is therefore without merit.

Respondent next contends that the real cause of petitioner's injury was a fainting spell or other idiopathic condition, and also that the accident did not happen in the course of her employment. The rescript of the trial justice

sets forth no reasons for his decision. Following a brief recital of the undisputed facts and citing *Nowicki* v. *Byrne*, 73 R. I. 89, 92, he expressed himself as follows: "Assuming the fall to be an accident, we think the evidence fails to establish that any causal connection exists between the injury and petitioner's employment or the conditions under which it was required to be performed."

The *Nowicki* case, which is entirely different in its facts from the instant case, was undoubtedly cited by the trial justice for the test therein approved and applied by which to determine whether an accident arises out of the employment. According to that test an accident arises out of the employment if it happens (1) within the period of employment; (2) at a place where the employee may reasonably be; and (3) while he is reasonably fulfilling the duties of the employment or doing something incidental thereto or to the conditions under which it is to be performed. In *Connelly* v. *Samaritan Hospital*, 259 N. Y. 137, at page 140, it is stated that every risk, whether great or small, usual or extraordinary, is incident to the employment where some condition of the employment is "a factor in the combination of circumstances out of which the accidental injury arose."

Before the employee is entitled to compensation it must further appear that the accident occurred "in the course of his employment." Considering the many and often complicated situations presented by industrial accidents, courts usually refrain from an attempt to define the meaning of that phrase with precision. The determination of whether an accident arose out of and in the course of employment is ordinarily left to a consideration of the facts in each case. However, we are impressed by the statement of Lord Loreburn, L. C., in *Moore* v. *Manchester Liners, Ltd.*, 3 B.W.C.C. 527, at page 529, that "an accident befalls a man 'in the course of' his employment, if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a

place where he may reasonably be during that time." Although often stated in different language to meet the exigencies of a particular case, the phrase under discussion is uniformly given the same general meaning by the courts in this country.

When the undisputed facts in the instant case are scrutinized it is our judgment that petitioner suffered a compensable injury arising out of and in the course of employment. Although she was injured during a rest period it nevertheless occurred in the course of her employment, as such period was a permitted incident of the employment. Furthermore, at the time of the injury petitioner was at a place where she might reasonably be. To hold otherwise would completely ignore the important fact that the terrace was a permissible and customary place for female employees to go during rest periods. There can be no doubt that such periods were permitted as an incident of employment not only for the personal comfort of those employees but also to conserve efficiency in the discharge of their respective duties. The fact that at the time of her injury petitioner was not in the discharge of duties directly connected with her employment is immaterial in the peculiar circumstances of this case.

We also find no merit in respondent's contention that petitioner's injury was caused by a fainting spell or blanking of the mind while on the terrace which was not defective in any way. The argument in support of that contention is not persuasive, first, because it indirectly attempts to raise the question of whether there was an accident, a matter which we have already said is not in issue in this case; and secondly, because it disregards the important fact that petitioner did not fall on the floor of the terrace but fell a distance of some 40 feet from that floor to the ground below. The dangerous condition of respondent's premises permitting such a drop from the terrace to the ground was in the circumstances a special risk to which petitioner was exposed in connection with and as an inci-

dent of her employment or the conditions under which it was performed. Granting that in origin the cause of the fall may have been a fainting spell or blanking out of the mind, the immediate cause of her injury was the fall from the terrace to the ground. *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421.

The cases of *Fossum* v. *George A. Fuller Co.*, 70 R. I. 191, and *Remington* v. *Louttit Laundry Co.*, 77 R. I. 185, upon which respondent strongly relies, are not in point except in so far as they state and apply the fundamental rules of law that were applicable to the particular facts appearing therein. Both of those cases involved no fall from a height, as here, and further, the court was there dealing with findings of fact by a trial justice on conflicting evidence and not, as in the instant case, with a situation where the question is the legal effect of facts that are not in dispute.

In a number of particulars the instant case, though more extreme, is similar to *Di Libero* v. *Middlesex Construction Co.*, 63 R. I. 509, where an employee was injured by falling into a trench on his way home from work. Among the numerous cases from other jurisdictions that we have examined involving injury to an employee in a fall from a height, the most pertinent are *Wicks* v. *Dowell & Co., Ltd.*, 2 K. B. 225 (1905), *Moore* v. *Manchester Liners, Ltd., supra, Rockford Hotel Co.* v. *Industrial Comm'n*, 300 Ill. 87, *Baltimore Towage & Lighterage Co.* v. *Shenton*, 175 Md. 30, and *Von Ette's Case*, 223 Mass. 56. In the *Wicks* case a workman was seized by an epileptic fit while unloading a ship and fell into the hold, suffering serious injury. In the *Moore* case a sailor, who had been on shore to purchase certain necessaries not provided by the owners of the ship, fell off a ladder which gave access from the quay to the ship and was drowned. In the *Rockford Hotel Co.* case the workman died from burns suffered when he fell into an ashpit while dumping hot ashes and cinders from a furnace. And in the *Baltimore Towage & Lighterage Co.* case a truck

driver, while on a pier waiting for his truck to be loaded, was drowned when he fell into the water.

The facts in *Von Ette's Case* closely resemble those in the case at bar. There the workman was employed in the composing room of a Boston newspaper. Although the respondent had a rule forbidding its employees to leave that room, it was the common practice of persons there employed to go upon the roof of the building for fresh air. The evidence showed that the employee in question had left his work about 11 p.m. and at 3:45 a.m. he was found dead on the ground six stories below the floor where he worked. No one had seen him fall and there was no reason to suspect suicide. The court held that the workman's dependents were entitled to recover and at page 60 of the opinion said: "There was ample evidence of a general practice of the men who worked in the composing room to go upon the roof to get fresh air and cool off on hot nights and that such practice was known to the employer. * * * The accident happened upon the premises of the employer and we think, *in view of the practice* which might have been found to exist under which the men went upon the roof for fresh air, that the act of the deceased in going there on a warm night was not necessarily outside his employment, but could have been found to be incidental thereto. An injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time." (italics ours)

After careful consideration of the undisputed facts in the instant case it is our opinion that it was error to deny petitioner's claim for compensation.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Matthew J. Faerber,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, S. Everett Wilkins, Jr., Thomas J. Hogan,* for respondent.