July 10, 2025

**Supreme Court**

No. 2024-99-Appeal.
(PC 20-6386)

(Dissent begins on Page 20)
(Dissent begins on Page 25)

Staci K. Shepherd            :

v.                           :

Rhode Island State Police et al.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Staci K. Shepherd             :

v.                            :

Rhode Island State Police et al.[1]      :


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  By all accounts, Lieutenant Staci K.

Shepherd (Lt. Shepherd or plaintiff) was the epitome of a Rhode Island State Police

trooper, having honorably served that distinguished institution for twenty-two years.

---

[1] During the pendency of the Superior Court proceedings, Colonel Darnell S. Weaver succeeded Colonel James M. Manni as Superintendent of the Rhode Island State Police.  The complaint filed in the Superior Court named Colonel Manni, the State of Rhode Island, and the Rhode Island State Police as defendants.  Pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure, Colonel Weaver was automatically substituted for his predecessor.  Because all relevant events occurred when Colonel Manni was the superintendent, we refer to the defendant as Superintendent Manni, the superintendent, or the defendant.  In addition, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Andrade v. Perry*, 863 A.2d 1272, 1278 (R.I. 2004) (quoting *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1081 (R.I. 1999)).  As such, we have corrected the caption to reflect the Rhode Island State Police as the lead defendant.

During her tenure, Lt. Shepherd rose through the ranks, earning commendations and letters of recognition from citizens, attorneys, state police superintendents, multiple police chiefs, and a governor. Colonel James M. Manni, then the superintendent of the Rhode Island State Police, expressed during his deposition that, notwithstanding the disabling injury that ended her career, Lt. Shepherd would have been appointed a member of his command staff and been one of the "key players" in his administration. Unfortunately, and sadly, on May 2, 2017, Lt. Shepherd participated in the annual firearms requalification program and suffered a heart attack, rendering her permanently disabled at the age of forty-nine.

As a result, Lt. Shepherd filed an application for a disability pension in accordance with G.L. 1956 § 42-28-21 and Article XIV of the collective-bargaining agreement (CBA) between the State of Rhode Island and the Rhode Island Troopers Association.[2] In due course, Superintendent Manni issued a written decision and concluded that Lt. Shepherd failed to satisfy her burden of proving that the heart

---

[2] General Laws 1956 § 42-28-21(a) states, in relevant part:

> "If any member of the division whose service is terminated on or after January 1, 1960, shall have in the course of performance of his or her duties suffered injury causing disability or causing death, that member or his or her surviving dependent relatives * * * shall be entitled to an annual pension of seventy-five percent (75%) of the annual salary paid to that member at the time of his or her termination of service by reason of injury or death."

attack was causally related to her employment. Accordingly, Superintendent Manni denied the application for a disability pension. The plaintiff responded by filing a declaratory-judgment complaint, and a justice of the Superior Court declared that the superintendent's decision was arbitrary and capricious, and that Lt. Shepherd was entitled to a disability pension. The defendant filed this timely appeal.

This matter came before the Supreme Court pursuant to an order directing that the parties show cause why the issues raised in this appeal should not be summarily decided. After examining the memoranda and arguments presented by the parties, we conclude that cause has not been shown and proceed to decide the appeal at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

In 1993, Lt. Shepherd applied to become a trooper with the Rhode Island State Police; soon thereafter, she was accepted into the state police training academy, the only woman invited to participate that year. To partake in the fitness test, Lt. Shepherd underwent a physical examination. An April 1993 physician's statement certified that Lt. Shepherd was physically fit and in "excellent health." A year later, a different physician performed another physical examination, which included an electrocardiogram and chest x-rays, and similarly declared Lt. Shepherd "to be in excellent health." Lieutenant Shepherd graduated from the training academy and accepted an offer of employment for the position of state trooper.

From 1997 through 2012, Lt. Shepherd reenlisted as an officer within the division of the state police six times (approximately every three years). Each time, Lt. Shepherd underwent a physical examination, which found that she was medically able to perform her duties. It is undisputed that before May 2, 2017, there was no suggestion that Lt. Shepherd suffered from a cardiac-related disease, nor was there a history of cardiac disease in her family; instead, the record is pellucid that she exhibited few, if any, cardiac risk factors.

On May 2, 2017, Lt. Shepherd attended in-service training at the state police training academy, which was scheduled to begin at 8 a.m. Two hours earlier, at approximately 6 a.m., Lt. Shepherd experienced focal pain in her mid-forearms, accompanied by a few seconds of cramping. A second episode transpired while Lt. Shepherd was traveling to the training academy lasting a few seconds, and a third incident occurred during the morning training session. Based on these occurrences, Lt. Shepherd contacted her primary-care physician and scheduled an appointment for later in the afternoon. Because this medical appointment conflicted with the afternoon annual firearms qualification, Lt. Shepherd requested to qualify during the lunch break. The range officer agreed.

At approximately 12:15 p.m., Lt. Shepherd completed the qualification course and experienced additional physical symptoms, including discomfort in the forearms and sternum, lightheadedness, dizziness, and diaphoresis (excessive sweating).

- 4 -

Lieutenant Shepherd exited the firing range and drove her state police cruiser to the main training academy building; once there, an emergency rescue was dispatched, and Lt. Shepherd was transported to the Miriam Hospital emergency room where it was determined that she was in cardiac arrest and suffering a heart attack. Lieutenant Shepherd was rushed into surgery, immediately operated upon, and received two stents. After several days of hospitalization, Lt. Shepherd was released and later entered a cardiac rehabilitative program. On October 13, 2017, Lt. Shepherd underwent a second cardiac procedure and received a third stent.

By letter dated April 25, 2019, Lt. Shepherd expressed her "utmost regret" and requested retirement from the state police pursuant to § 42-28-21, and Article XIV of the CBA. Lieutenant Shepherd advised that she had been under the consistent care of Daniel J. Levine, M.D., Director of the Advanced Heart Failure Program at Rhode Island Hospital, and was "still suffering the effects of the multiple cardiac events that I have sustained." Lieutenant Shepherd elucidated that "the damage done to my heart has directly affected my energy and stamina," that "[r]outine exertion results in significant fatigue that greatly limits my every day activities," and that "[i]n Dr. Levine's opinion, although I have reached maximum medical improvement, I am unable to return to my position to serve in a full-duty capacity with no restrictions."

On May 1, 2020, Superintendent Manni convened what he described as a "quasi-judicial * * * non-confrontational, non-adversarial and informal" hearing on Lt. Shepherd's application for a disability pension. Superintendent Manni directed that the state police would not present a case supporting or opposing the disability pension request and, although permitted to do so, plaintiff presented no testimonial evidence on her behalf. Instead, the entire administrative record was documentary in nature; *viz.*, Lt. Shephard's medical records, documents from Lt. Shepherd's personnel file and service jacket, and written statements from Lt. Shepherd, Dr. Levine, and Thomas E. Noonan, M.D., the cardiologist appointed by defendant to examine Lt. Shepherd and provide an independent medical opinion.[3] A transcript of the May 1, 2020 hearing was also included in the administrative record.

On August 14, 2020, Superintendent Manni issued an eleven-page decision and denied the application for a disability pension. Superintendent Manni determined, as a matter of fact, that Lt. Shepherd "suffered [an] injury causing disability" and that such disability was "permanent." Superintendent Manni also concluded—purportedly as a matter of fact—that "Lieutenant Shepherd did not prove that her disabling injury was suffered 'in the course of performance of * * * her duties.'" (Quoting § 42-28-21(a).)

---

[3] Although not required to do so, Lt. Shepherd complied with Superintendent Manni's order to undergo an independent medical examination by Dr. Noonan.

In reaching this conclusion, the superintendent relied upon *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681 (R.I. 1985), and *Gartner v. Jackson's, Inc.*, 95 R.I. 489, 188 A.2d 85 (1963), both workers' compensation cases. He concluded that "these cases expressed a reasonable and appropriate standard to utilize in determining whether a heart attack was suffered in the course of performance of duties." In particular, the superintendent expressed his belief that "in heart-attack cases * * * the crucial issue is whether there is a causal relationship or nexus between the work and the attack" and that "the important factor in heart[-]attack cases is * * * whether such work, whatever its nature, caused or precipitated the heart attack." (Quoting *Mulcahey*, 488 A.2d at 684; *Gartner*, 95 R.I. at 495, 188 A.2d at 88.) Applying that putative standard, the superintendent determined that, in the absence of other facts, he "cannot make the evidentiary leap from the occurrence of the heart attack *while* Lieutenant Shepherd was on duty to the occurrence of the heart attack *because* Lieutenant Shepherd was on duty or because of the cumulative effect of her being on duty many times before." On that basis, Superintendent Manni denied the disability pension application.[4]

_____

[4] The superintendent also noted Lt. Shepherd's argument that the collective-bargaining agreement (CBA)—and, specifically, the heart-attack presumption provision—had been applied to supervisory staff by prior superintendents and should be applied in this case. Although Superintendent Manni could have applied the presumption, he declined to do so, because, as a lieutenant, Lt. Shepherd was excluded from the bargaining unit. *See Ferreira v. Culhane*, 736 A.2d 96, 97 (R.I. 1999) (mem.) ("Defendants point out that plaintiff had no right to

- 7 -

On September 11, 2020, Lt. Shepherd filed in the Superior Court a three-count complaint, pursuant to G.L. 1956 chapter 30 of title 9, the Uniform Declaratory Judgments Act.[5] The complaint sought (1) a declaration that Lt. Shepherd had the right to a disability pension pursuant to § 42-28-21, (2) damages due to the breach of contract, and (3) a preliminary and permanent injunction awarding plaintiff a disability pension. In February 2021, defendant filed a motion for summary judgment, which the trial justice denied. In November 2022, plaintiff filed a motion for partial summary judgment (with respect to counts 1 and 3), which the trial justice granted.

---

receive a disability pension under the collective bargaining agreement, because as a former lieutenant, he was expressly excluded from the bargaining unit."). Our resolution of this appeal makes examination of this issue unnecessary, except to note that Superintendent Manni had the discretion to look to the CBA but declined to do so. In defense of his decision, the superintendent noted that plaintiff's legal counsel acknowledged that the CBA was inapplicable.

[5] General Laws 1956 § 9-30-2 provides:

> "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

In so doing, the trial justice criticized the superintendent's putative requirement that Lt. Shepherd demonstrate causation to a reasonable degree of medical certainty, questioned the superintendent's decision to explore alternative work assignments within the state police for Lt. Shepherd after determining that she was permanently disabled, denounced the superintendent's failure to consider exercising his discretion to apply the CBA's heart-attack presumption provision, and faulted the governor for not confirming the decision to deny the disability pension application.[6]  Despite finding numerous shortcomings with the superintendent's decision, the trial justice did not address whether Lt. Shepherd's heart attack was causally related to her employment but instead examined each step of the superintendent's decision and determined that those putative missteps informed the overall analysis.  As a result, the trial justice concluded that the superintendent's decision was "illogical, irrational, and unreasonable," and he declared that Lt. Shepherd was "entitled to a disability pension," retroactive to August 29, 2020.  On February 5, 2024, a final judgment entered on counts 1 and 3 pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.  The defendant filed a timely appeal.

---

[6] The trial justice articulated his reasoning for granting the motion for partial summary judgment, but he also incorporated the reasoning set forth in his decision denying the state's motion for summary judgment.

- 9 -

**Standard of Review**

"Section 42-28-21 does not provide any specific method of review of a determination by the superintendent in respect to a disability pension * * *." *Canario v. Culhane*, 752 A.2d 476, 478 (R.I. 2000). Rather, "[w]hether a state police officer is eligible for a disability pension is a question reserved to the superintendent of the state police, subject to the governor's confirmation." *Rhode Island Troopers Association v. Division of State Police*, 316 A.3d 1140, 1149 (R.I. 2024).[7] It is true that "[o]ur previous cases have given great deference to the discretionary authority of the superintendent," but with the exception of *Canario*, our prior disability pension cases have evolved from an administrative appeal. *See Canario*, 752 A.2d at 479. Notably, both *Rhode Island Troopers Association* and *Ferreira v. Culhane*, 736 A.2d 96 (R.I. 1999) (mem.), emanated from administrative appeals. *See Rhode Island Troopers Association*, 316 A.3d at 1148 (noting the plaintiff filed a three-count complaint seeking an administrative appeal); *Ferreira*, 736 A.2d at 97 ("We also note that plaintiff has focused solely on his administrative appeal and has not raised any arguments on appeal specifically regarding his declaratory judgment claim.").

---

[7] The dissenting opinions focus on the superintendent's discretion to determine an officer's eligibility for a disability pension and in so doing, principally rely upon *Rhode Island Troopers Association v. Division of State Police*, 316 A.3d 1140 (R.I. 2024), *Canario v. Culhane*, 752 A.2d 476 (R.I. 2000), and *Ferreira*.

- 10 -

In this case, unlike *Rhode Island Troopers Association* and *Ferreira*, we are not confronted with an administrative appeal; instead—similar to *Canario*—we are presented with a direct appeal from a trial justice's decision granting partial summary judgment and declaring that, pursuant to chapter 30 of title 9, plaintiff is entitled to a disability pension. As we detail *infra*, it is well established that whether an injury occurs in the course of employment is a question of law, which this Court reviews *de novo*. Thus, we are reviewing the correctness of a declaratory judgment based on an error of law.

We disagree that our opinion represents a departure from this Court's precedent. Indeed, "[o]ur standard of review of the decision of a trial justice sitting without a jury is extremely deferential in respect to findings of fact." *Canario*, 752 A.2d at 479. "However, in respect to the standard of review exercised by the Superior Court over a determination made by the superintendent, we would apply a standard applicable to decisions by the Superior Court on questions of law and would, therefore, review such a determination *de novo*." *Id.* (emphasis added). Questions of law are not discretionary determinations.

In this respect, we have observed that "[a] question of law is presented in reviewing whether or not an injury arose out of and in the course of * * * employment * * *." *Lomba v. Providence Gravure, Inc.*, 465 A.2d 186, 189 (R.I. 1983). We have likewise recognized that "where the only question before the

- 11 -

superior court is as to the *legal effect* of certain admitted facts the question is one of law, which is subject to review on appeal." *Corry v. Commissioned Officers' Mess (Open)*, 78 R.I. 264, 267, 81 A.2d 689, 691 (1951); *see also DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 449, 399 A.2d 1229, 1234 (1979) ("We are convinced that a question of law is presented in reviewing whether an injury arose out of and in the course of employment when the facts, as found by the commission and supported by competent legal evidence, permit reasonable men to draw only one conclusion. This standard is applicable even when relevant facts are not in dispute.") (footnote omitted).[8]

---

[8] We reject the suggestion that our invocation of workers' compensation cases is inapt. Notably, it was the superintendent who initially invoked this area of the law when he declared in his decision that he found guidance in *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681 (R.I. 1985), and *Gartner v. Jackson's, Inc.*, 95 R.I. 489, 188 A.2d 85 (1963), both workers' compensation cases. We also observe that G.L. 1956 § 45-21.2-9(g) provides that "[i]n the event that any party is aggrieved by the determination of the retirement board pursuant to [G.L. 1956] § 45-19-1, for an injury or illness occurring on or after July 1, 2011, the party may submit an appeal to the Rhode Island workers' compensation court." "All proceedings filed with the workers' compensation court pursuant to this section shall be de novo and shall be subject to the provisions of [G.L. 1956] chapters 29 — 38 of title 28 [the workers' compensation laws] for all case management procedures and dispute resolution processes, as provided under the rules of the workers' compensation court." Section 45-21.2-9(k). Thus, contrary to any suggestion that the workers' compensation cases that we have cited are not relevant to this matter, the General Assembly has expressly decreed that appeals from the retirement board's denial of injured-on-duty benefits to, *inter alia*, state police officers, shall be made to the Workers' Compensation Court and subject to *de novo* review. *See* § 45-21.2-9(g), (k). In any event, the legal authority that we cite establishes that the application of uncontradicted facts to determine whether Lt. Shepherd's heart attack occurred in the course of performance of her duties represents a question of law.

Here, the relevant and material facts are not in dispute, and we are presented with a question of law concerning whether Lt. Shepherd's heart attack occurred "in the course of performance of * * * her duties * * *." Section 42-28-21(a). As this Court expressed in reviewing an accidental disability pension brought by a former member of the Cranston Police Department, "[o]ur precedent makes clear that a *de novo* standard is applicable in this case due to the fact that we are confronted with a grant of summary judgment in a declaratory judgment action which encompasses a purely legal issue * * *." *Grasso v. Raimondo*, 177 A.3d 482, 487 (R.I. 2018). We apply a *de novo* review.

## Discussion

On appeal, defendant contends that the trial justice erred when he (1) denied a defense motion to quash Superintendent Manni's deposition and (2) determined Superintendent Manni's decision was arbitrary and capricious, and awarded Lt. Shepherd a disability pension.[9] Applying a *de novo* standard of review, we conclude that the trial justice properly determined that Lt. Shepherd was entitled to a disability

---

[9] The defendant contends that the trial justice erred when he denied the superintendent's motion to quash his deposition but fails to elucidate or provide any explanation (or legal authority) for this argument. We have repeatedly "admonished that 'simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'" *State v. Tavares*, 312 A.3d 449, 465 (R.I. 2024) (quoting *Drew v. State*, 198 A.3d 528, 530 (R.I. 2019) (mem.)). Thus, notwithstanding the state's inexplicable effort to quash the superintendent's deposition, in its entirety, we deem this appellate issue waived.

- 13 -

pension, albeit on alternative grounds from those articulated by the trial justice. *See, e.g.*, *Pleasant Management, LLC v. Carrasco*, 960 A.2d 216, 224 (R.I. 2008) (observing that this Court may "affirm a ruling on grounds other than those stated by the lower-court judge") (quoting *State v. Nordstrom*, 529 A.2d 107, 111 (R.I. 1987)).

It is well recognized that "the superintendent ha[s] great discretion in determining an officer's eligibility for a disability pension * * *." *Canario*, 752 A.2d at 479. In accordance with that discretion, Superintendent Manni expressed that he "found guidance" in *Mulcahey* and *Gartner*. Specifically, the superintendent expressed his understanding that "in heart-attack cases * * * the crucial issue is whether there is a causal relationship or nexus between the work and the attack" and that "the important factor in heart[-]attack cases is * * * whether such work, whatever its nature, *caused or precipitated* the heart attack." (Quoting *Mulcahey*, 488 A.2d at 684; *Gartner*, 95 R.I. at 495, 188 A.2d at 88 (emphasis added).) Critically, the superintendent recognized and applied this portion of our decision in *Mulcahey* but overlooked our admonition that in heart-attack cases "we do not equate the term 'causal relationship' with the term 'proximate cause' as found in negligence actions. Here, it is *enough* if the conditions and nature of the employment *contribute* to the injury." *Mulcahey*, 488 A.2d at 684 (emphases added). We deem this error determinative.

- 14 -

In the case at bar, we acknowledge Superintendent Manni's sincere effort to apply the undisputed facts to a causation standard and reach a proper result. However, after adopting *Mulcahey*, the superintendent erred when he failed to apply the "contribute to the injury" standard, which *Mulcahey* adopted. Instead, the superintendent applied a more exacting negligence-type causation standard, which *Mulcahey* expressly disavowed. *See Mulcahey*, 488 A.2d at 684.

For example, the superintendent explained that he "cannot make the evidentiary leap from the occurrence of the heart attack while Lieutenant Shepherd was on duty to the occurrence of the heart attack *because* Lieutenant Shepherd was on duty or *because* of the cumulative effect of her being on duty many times before." (Emphasis added and emphasis in original omitted.) The word "because" does not equate with the term "contribute." "Because" means "for the reason that; due to the fact that[.]" The Random House Dictionary of the English Language 184 (2d ed. 1987); *see also* The American Heritage Dictionary 158 (5th ed. 2011) (defining "because" to mean "[f]or the reason that; since"). In contrast, "contribute" is defined as "[t]o help bring about a result; act as a factor[.]" The American Heritage Dictionary 399 (5th ed. 2011). The superintendent also invoked the "whether such work, whatever its nature, *caused or precipitated* the heart attack" standard set forth in *Gartner*. *See Gartner*, 95 R.I. at 495, 188 A.2d at 88 (emphasis added).

- 15 -

Requiring Lt. Shepherd to bear the burden and prove that her heart attack occurred "because" she was on duty—or was "caused or precipitated" by employment—disregarded our admonition in *Mulcahey* that "we do not equate the term 'causal relationship' with the term 'proximate cause' as found in negligence actions. Here, it is enough if the conditions and nature of the employment contribute to the injury." *Mulcahey*, 488 A.2d at 684. The result of this more exacting scrutiny was to impose a causation standard that even Dr. Noonan, defendant's medical expert, opined could not be satisfied under any set of circumstances: "Coronary atherosclerosis is pervasive in the general population. *The etiology is unknown*." (Emphasis added.)

In an apparent effort to seek a more decisive medical opinion in an area lacking such exactness, defendant sought clarification from Dr. Noonan concerning whether he could opine on whether Lt. Shepherd's employment was the causal nexus of her heart attack. He responded, in pertinent part:

> "[T]he specifics of the Lieutenant's employment including work hours, mental stress, and food habits may have been contributors to the development of atherosclerosis and coronary artery disease. These are not risk factors that have been studied in large scale clinical trials. *It is not possible to prove or disprove their contribution to her disease state. I cannot say with reasonable clinical certainty that her employment was the specific causal nexus of the myocardial infarction. I do not see how any physician or examination could make that determination.* Dyslipidemia is a known risk factor for developing coronary atherosclerosis. *However, one cannot prove or*

- 16 -

*disprove dyslipidemia's causality with respect to her disease state*." (Emphases added.)

We conclude that, having adopted *Mulcahey*, the superintendent was obliged to apply the causation standard set forth in *Mulcahey*, *viz.*, the "contribute to the injury" standard.[10] *See Mulcahey*, 488 A.2d at 684. The failure to do so was error.

Arguably a remand to the Superior Court may be appropriate, but we decline to do so in light of the posture of this appeal and our inherent supervisory powers. *See Cadillac Lounge, LLC v. City of Providence*, 913 A.2d 1039, 1043 (R.I. 2007); *Cardinale v. Cardinale*, 889 A.2d 210, 223 (R.I. 2006). In particular, this Court has the benefit of the complete administrative record and as discussed *supra*, that record is entirely documentary in nature and no testimony was elicited. Moreover, because this appeal emanates from a declaratory-judgment complaint, and not an administrative agency decision, remand to the agency is not possible. Finally, the facts are undisputed; the only issue presented for our consideration is the *legal effect* of whether Lt. Shepherd's heart attack occurred "in the course of performance of * * * her duties * * *." Section 42-28-21(a). This is a question of law, which we review *de novo*. *See Lomba*, 465 A.2d at 189; *DeNardo*, 121 R.I. at 449, 399 A.2d at 1234; *Corry*, 78 R.I. at 267, 81 A.2d at 691. Considering the present

---

[10] We pause to note that the heart-attack presumption set forth in § 14.3 of the CBA is a contractual recognition by the state police of the medical conundrum faced in proving causation in heart-attack cases.

- 17 -

circumstances, we are at least as well positioned as the Superior Court to resolve this matter with finality. Applying *Mulcahey* and the "contribute to the injury" standard for heart-attack cases leads to only one conclusion: Lt. Shepherd's employment, which indisputably involved stress, unusual work hours, and dietary deficiencies due to these hours, contributed to her heart attack, and she was entitled to a disability pension.

Prior to May 2, 2017, Lt. Shepherd did not have any cardiac-related diagnoses and had few, if any, cardiac-related risk factors. More specifically, Lt. Shepherd did not have diabetes, was a nonsmoker, exercised regularly, and had no family history of coronary artery disease. To be sure, Lt. Shepherd had elevated levels of lipids and experienced some symptoms before reporting to the training academy on the morning of May 2, 2017; but, pursuant to the standard adopted by the superintendent, we examine the record to determine whether "the conditions and nature of the employment *contribute*[*d*] to the injury." *Mulcahey*, 488 A.2d at 684 (emphasis added).

Although Lt. Shepherd had intermittent symptoms earlier in the day, Dr. Noonan submitted in response to defendant's request for an independent medical opinion that "[w]hile she was running [on the qualification course] the chest discomfort worsened," and "[i]mmediately after the run, she became diaphoretic and had substernal chest pain and tightness coupled with dyspnea." In our opinion, this

- 18 -

undisputed averment alone demonstrates that "the conditions and nature of the employment contribute[d] to the injury." *Mulcahey*, 488 A.2d at 684.

Independent of the events immediately following her participation on the qualification course—which included being rushed into surgery while in cardiac arrest and receiving two stents—Dr. Noonan also expressed that although Lt. Shepherd had few risk factors, he had

> "concerns that her employment as a lieutenant in the Rhode Island State Police may have contributed to these risk factors associated with coronary atherosclerosis. Specifically mental stress associated with her position as both as a state trooper and as an administrator and unusual work hours with reduced food choices based on these hours may be a contributor. There is data that episodic increases in adrenergic tone with catecholamines from mental, emotional and physical stress may be associated with increased atherosclerosis. As an active Lieutenant in the Rhode Island State Police and as an administrator she is exposed to these stresses in her work environment."

Finally, we note that all, including Superintendent Manni, agree that Lt. Shepherd was not medically able to return to the demands required of all sworn members of the state police. In this respect, the superintendent acknowledged that stress is an inherent aspect of state police employment, and Dr. Noonan opined that if Lt. Shepherd returned to the state police and was subjected to "unexpected cardiac demands," she risked "sudden death." Under the circumstances presented, we equate the undisputed determination that Lt. Shepherd could not return to her former duties because she risked suffering another heart attack with the conclusion that "the

- 19 -

conditions and nature of the employment contribute[d] to the injury." *Mulcahey*, 488 A.2d at 684.

## Conclusion

For the reasons stated, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.

**Justice Robinson, dissenting.** I respectfully but very vigorously dissent from the opinion of the majority. In my judgment, that opinion flies in the face of the broad allocation of discretionary authority in this domain and cannot be squared with controlling precedent regarding disability pensions sought by members of the Rhode Island State Police. I do not question the sincerity of the analysis undertaken by my colleagues in the majority, but I am convinced that they have seriously erred in the manner in which they have scrutinized the superintendent's decision concerning the disability pension at issue in this case. It is my candid view that they have inexplicably failed to exercise the requisite deference to the "*great discretion*" that is accorded to the superintendent of the Rhode Island State Police when the superintendent is engaged "in determining an officer's eligibility for a disability pension * * *." *Canario v. Culhane*, 752 A.2d 476, 479 (R.I. 2000) (emphasis added). I shall now proceed to more fully explain my view that the majority has seriously erred; I shall do so with brevity and in a collegial spirit.

I begin by emphasizing that the majority opinion expressly acknowledges that "the superintendent ha[s] great discretion in determining an officer's eligibility for a disability pension * * *." (Quoting *Canario*, 752 A.2d at 479.)[1] It is my view that, while the majority opinion acknowledges the existence of that "great discretion" standard, it then fails to abide by it in actuality. To put it bluntly, it seems to me that, after giving verbal recognition to the "great discretion" standard, the members of the majority have then proceeded to analyze the facts of the instant case on the basis of how they would have exercised that discretion if such were their role.

In order to understand why I so unequivocally part company with the majority's approach to this case, it is important to bear in mind the rather

_____

[1]     In *Canario v. Culhane*, 752 A.2d 476 (R.I. 2000), Chief Justice Weisberger noted that, in a case decided one year earlier, *Ferreira v. Culhane*, 736 A.2d 96 (R.I. 1999), this Court had "approved of the Superior Court's holding as a matter of law that the superintendent had great discretion in determining an officer's eligibility for a disability pension * * *." *Canario*, 752 A.2d at 479. (However, lest it be thought that "great discretion" is considered to be the equivalent of unbridled discretion, it is noteworthy that the superintendent in the instant case expressly acknowledged that, while he had "great discretion in determining an officer's eligibility for a disability pension," said discretion was "not completely unfettered." He noted that his discretion "must be exercised reasonably and without arbitrariness or capriciousness.")

        Also noteworthy is the fact that, in the very recent case of *Rhode Island Troopers Association v. Division of State Police*, 316 A.3d 1140 (R.I. 2024), this Court stated with great clarity: "Whether a state police officer is eligible for a disability pension is a question reserved to the superintendent of the state police, subject to the governor's confirmation." *Rhode Island Troopers Association*, 316 A.3d at 1149.

- 21 -

latitudinarian nature of discretionary decision-making in our jurisprudence. For example, in an important case in which this Court unanimously ruled that a hearing justice did not abuse her discretion when she denied a plaintiff's motion to amend its complaint, we wrote as follows:

> "[T]here are legitimate arguments in favor both of denying the motion to amend and in favor of granting same. However, in view of the abuse of discretion standard of review, we are unable to say that the hearing justice abused her discretion in ruling as she did. The issue, of course, is *not* what ruling a member of this Court might have made if he or she were confronted with the motion to amend at the trial court level. The only issue properly before us is whether the hearing justice abused her discretion in ruling as she did, and we hold that she did not." *Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 533 (R.I. 2011). [2]

---

[2] *See also Rhode Island Troopers Association*, 316 A.3d at 1151 (upholding a previous superintendent's denial of a disability pension and commenting that "[o]ne need not agree with the superintendent's denial of the disability pension to recognize that it was scarcely irrational" for him to conclude as he did on the basis of the facts before him); *State v. McRae*, 31 A.3d 785, 792 (R.I. 2011); *State v. Gongoleski*, 14 A.3d 218, 222 (R.I. 2011); *State v. Gillespie*, 960 A.2d 969, 980 (R.I. 2008); *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 345 n.10 (R.I. 2008). *See generally National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) ("The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.").

In my judgment, the heart of the matter with respect to the case before us is the unclear and perhaps internally contradictory nature of certain language in this Court's opinion in *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681 (R.I. 1985)—a case to which both the superintendent and my colleagues in the majority have looked for guidance in addressing the case at hand. The following language which appears in one paragraph in this Court's opinion in *Mulcahey* must be closely scrutinized:

> "[I]n heart-attack cases this court has said that it is immaterial whether the work performed by an employee involved unusual physical exertion. Rather the crucial issue is whether there is a causal relationship or nexus between the work and the attack. * * * It must be kept in mind that in workers' compensation cases we do not equate the term 'causal relationship' with the term 'proximate cause' as found in negligence actions. Here, it is enough if the conditions and nature of the employment contribute to the injury." *Mulcahey*, 488 A.2d at 684.

It is important to focus on the fact that the same paragraph in the *Mulcahey* opinion states at one point that, in heart-attack cases, "*the crucial issue* is whether there is a causal relationship or nexus between the work and the attack." *Id.* at 684 (emphasis added). Astonishingly, however, later in that same paragraph the opinion states: "Here, it is enough if the conditions and nature of the employment contribute to the injury." *Id.* It is clear that the superintendent was guided by the first of the above-quoted sentences, whereas the majority opinion focuses on the second of

- 23 -

those two sentences.[3]  Under our clear precedent, it was the superintendent's role to exercise his "great discretion" in choosing between those two somewhat different approaches to the disability pension issue, and I firmly maintain that his choice as to causal nexus should have been accorded great deference[4]—even if some other decision-maker might have chosen differently.  I see a real parallel here with the situation in *Harodite*, where we upheld the discretionary decision of the hearing justice in that case to deny the motion to amend the complaint while we simultaneously signaled that the hearing justice's ruling in that case was not necessarily the "ruling a member of this Court might have made if he or she were confronted with the motion to amend * * *." *Harodite*, 24 A.3d at 533.  In the same vein, it is noteworthy that the superintendent's decision in the instant case aptly cites

---

[3]  I would also observe that some of the language in the majority opinion can be viewed as radically liberalizing the criteria for disability pensions beyond what the statute and our precedent have previously contemplated.  And I think that such liberalization would be a grave error. *See, e.g.*, *Frost v. City of Newport*, 706 A.2d 1354, 1355 (R.I. 1998) (mem.) (affirming an arbitrator's decision in which the arbitrator "found as a fact that plaintiff and his union failed to sustain the burden of proving that the stress experienced by plaintiff was the result of emotional strain and tension of greater dimension than the day-to-day emotional strain and tension which all employees experience"); *Gaines v. Senior Citizens Trans., Inc.*, 471 A.2d 1357, 1358 (R.I. 1984).

While the focus of this dissent is on what I consider to be the majority's disregard of the "great discretion" canon, I wish also to make it clear that I in no way join what I view as the majority's myopic concentration on the "contribute to the injury" language in *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681 (R.I. 1985).

[4]  *See Canario*, 752 A.2d at 479.

and quotes from an opinion of the late Judge Bruce Selya of the United States Court of Appeals for the First Circuit, which reads in pertinent part as follows: "[T]wo judges can decide discretionary matters differently without either judge abusing his or her discretion." *Ellis v. United States*, 313 F.3d 636, 653 n.10 (1st Cir. 2002).

I see no need to go on at length.  In my judgment, the majority has failed to demonstrate how the superintendent abused the "great discretion"[5] that is accorded to him in regard to determining an officer's eligibility for a disability pension.  He was confronted with what are two somewhat different standards in a relevant opinion of this Court.  He chose to be guided by one of those standards, while the majority of this Court has opted for the other.  I fail to see how the superintendent's choice of one of two diverging analytical routes can be said to be an abuse of his great discretion.  Respectfully, but rather passionately, I dissent.


**Justice Long, dissenting.** I respectfully dissent from the decision affirming the judgment of the Superior Court.

While Justice Robinson grapples with the majority's discussion of *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681 (R.I. 1985), I see no need to delve that far.  The crux of the issue, in my view, is the majority's break from settled law—

---

[5]     *Canario*, 752 A.2d at 479.

particularly its failure to honor our very recent enunciation about the deference we afford to decisions of superintendents.

In deciding *Rhode Island Troopers Association v. Division of State Police*, 316 A.3d 1140 (R.I. 2024), last term, this Court confirmed the highly deferential standard of review that applies when considering a decision by the superintendent of the Rhode Island State Police granting or denying a disability pension under G.L. 1956 § 42-28-21(a): "[T]he Superior Court reviews the superintendent's grant or denial of a request for a disability pension under an arbitrary-or-capricious standard. * * * This same deferential standard guides our review of the superintendent's decision on appeal." *Rhode Island Troopers Association*, 316 A.3d at 1149-50. We explicitly clarified that § 42-28-21(a) authorizes the superintendent "to make the underlying finding" as to whether an applicant suffered a disabling injury in the course of performance of their duties "subject * * * to arbitrary-or-capricious review." *Id.* at 1150. In practice, that standard means that "[w]hether a state police officer is eligible for a disability pension is a question reserved to the superintendent of the state police, subject to the governor's confirmation." *Id.* at 1149. Thus, we emphasized that it is the superintendent—not the judiciary—who exercises primary judgment in determining whether a disability occurred within the scope of employment, and such judgment is subject only to limited review. *See id.*

In my view, the application of that recently clarified arbitrary-or-capricious standard would therefore compel this Court to vacate the decision and judgment of the Superior Court and remand the matter for entry of judgment in favor of the superintendent. It is clear from the written decision of the superintendent that he chose a rational, logical standard for evaluating evidence presented in disability applications involving heart attacks: He looked to *Mulcahey and* the earlier case of *Gartner v. Jackson's, Inc.*, 95 R.I. 489, 188 A.2d 85 (1963), for guidance and determined that the pertinent question "is whether there is a causal relationship or nexus between the work and the attack." (Quoting *Gartner*, 95 R.I. at 495, 188 A.2d at 88.) The written decision further demonstrates that the superintendent considered the medical opinions provided by both Drs. Levine and Noonan to determine whether substantial evidence supported a finding that a causal nexus existed in Lt. Shepherd's case. The superintendent supportably found that no causal nexus between Lt. Shepherd's work and the heart attack existed. I therefore cannot conclude that the decision of the superintendent denying Lt. Shepherd's application for disability pension was arbitrary or capricious.

The majority circumvents the standard of review that this Court established in *Canario v. Culhane*, 752 A.2d 476 (R.I. 2000), and *Rhode Island Troopers Association*, stating that "whether or not an injury arose out of and in the course of * * * employment" is a question of law which we review *de novo* "where the only

question before the superior court is as to the *legal effect* of certain admitted facts * * *." (Quoting *Lomba v. Providence Gravure, Inc.*, 465 A.2d 186, 189 (R.I. 1983); *Corry v. Commissioned Officers' Mess (Open)*, 78 R.I. 264, 267, 81 A.2d 689, 691 (1951).) However, the cases the majority cites are workers' compensation cases that this Court has, until today, ignored in evaluating a superintendent's determination of whether an injury occurred within the course of employment. Indeed, in *Canario* this Court applied an arbitrary-or-capricious standard and concluded that the superintendent did not err in deciding that a state police officer had not been injured in the course of his employment. *Canario*, 752 A.2d at 480. We did the same just last year. *Rhode Island Troopers Association*, 316 A.3d at 1150-51 (applying an arbitrary-or-capricious standard and affirming superintendent's determination that trooper's injuries were not suffered in the course of his employment). Even accepting that the cases cited by the majority allow us to apply a *de novo* standard of review in the workers' compensation context, the instant case poses the same question evaluated in *Canario* and *Rhode Island Troopers Association*: whether a state police officer suffered an injury in the course of her or his employment. Although we have applied a *de novo* standard of review in workers' compensation cases, we have never applied that standard when evaluating a superintendent's determination under § 42-28-21(a). *See Canario*, 752 A.2d at 480; *Rhode Island Troopers Association*, 316 A.3d at 1150-51. Thus, there is no reason not to apply

- 28 -

the highly deferential standard of review to the superintendent's determination as we did in *Canario* and *Rhode Island Troopers Association*.

Accordingly, I would give the superintendent's reasoned decision the deference our precedent demands and vacate the judgment of the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Staci K. Shepherd v. Rhode Island State Police et al. |
| **Case Number** | No. 2024-99-Appeal. (PC 20-6386) |
| **Date Opinion Filed** | July 10, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard D. Raspallo |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Thomas M. Dickinson, Esq.<br>For Defendants:<br><br>Vincent F. Ragosta, Jr., Esq. |